UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 1:20-cv-00354-TWP-DLP |
| | ) |
| PREMIER GROUP AUTOS, LLC, | ) |
| JAMES BLACKBURN, and | ) |
| EDWARD A. KESSLER, | ) |
| | ) |
| Defendants. | ) |

**MOTION TO STAY PROCEEDING TO COMPEL ARBITRATION**

NextGear Capital, Inc. ("NextGear Capital"), by counsel, respectfully moves the Court to stay this proceeding and compel arbitration of this case, and states:

This case arises from a line of credit lending relationship pursuant to a March 26, 2019 Demand Promissory Note and Loan and Security Agreement (the "Note") between NextGear Capital and Premier Group Autos, LLC ("Borrower"), guaranteed by two (2) March 26, 2019 Individual Guaranties (the "Guaranties") between NextGear Capital and James Blackburn and Edward A. Kessler (collectively, "Guarantors," and collectively with Borrower, the "Defendants"). True and correct copies of the Note and Guaranties are attached to the Complaint as Exhibit A, Exhibit B and Exhibit C, respectively.

**Agreement to Arbitrate**

Pursuant to the terms of the Note and the Guaranties, the Defendants are required to arbitrate all claims and disputes arising out of the Note or Guaranties or any aspect of Defendants' relationship with NextGear Capital. In addition, the Note and Guaranties each expressly provide

that any matters related to arbitration are governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").

Sections 22 of the Note and 5(i) of the Guaranties contain the arbitration provision as follows:

> DISPUTE RESOLUTION; WAIVER OF CLASS ACTION RIGHTS.
>
> (a) In most cases, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims.  In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, Borrower agrees to arbitrate any such dispute or claim.  This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaims that may arise after the termination of this Note and any other Loan Document.  Additionally, Borrower acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Borrower, with any such arbitration being governed by the provisions of this Section 22.  Borrower, at its election, may opt-out of the arbitration provisions set forth in Sections 22(a), 22(c), and 22(d) by providing written notice of its election to opt-out no later than thirty (30) days after the Effective Date, which notice shall be provided to Lender pursuant to Section 15 ("<u>Opt-Out Notice</u>"), provided that such Opt-Out Notice shall become effective only upon Borrower's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period.  Borrower acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Borrower shall in all events be subject to the provisions of Section 22(b).
>
> (b) ANY ARBITRATION PROCEEDING UNDER THIS NOTE WILL TAKE PLACE ON AN INDIVIDUAL BASIS.  CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. BORROWER AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS

MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.  BORROWER AGREES THAT, BY ENTERING INTO THIS NOTE, BORROWER IS WAIVING ITS RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING.  UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING.  BORROWER ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES, ARE UNIQUE TO AND NEGOTIATED BY BORROWER, AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS.

(c) Any dispute or claim subject to arbitration pursuant to this Section 22 shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "JAMS Comprehensive Rules"); provided, however, that any dispute or claim that is subject to arbitration pursuant to this Section 22 and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect on the Effective Date (the "JAMS Streamlined Rules").  The disputes and claims subject to arbitration pursuant to this Section 22 will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may be.  The arbitrator shall be bound by and shall strictly enforce the terms of this Note and the other Loan Documents and may not limit, expand, or otherwise modify any term or provision of this Note or any other Loan Document or any other contract or document between Borrower and Lender.  The arbitrator shall not have the power to award to Borrower any damages that are excluded or that have been waived by Borrower under this Note or any other Loan Document, and Borrower irrevocably waives any claim that it may have thereto.  The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions.  The arbitrator shall render a written decision within six (6) months after being selected.  Any arbitration will be held in Indianapolis, Indiana (or its greater metro area).  Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; provided, however, that the arbitrator may, in his or her discretion, award costs and fees to the prevailing Party.  The result of any arbitration shall be final and binding upon the Parties.  Judgment upon any

>> arbitration award may be entered in any court having jurisdiction over the award or over the applicable party or its assets.
>
> (d) This Note and the other Loan Documents evidence transactions in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Section 22, notwithstanding the provisions of Section 20.

## I. Federal Law Strongly Favors Agreements to Arbitrate.

The FAA, 9 U.S.C. §1, *et. seq.*, "declare[s] a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (internal quotation marks omitted); *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2308-09 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As the Supreme Court has emphasized in several cases upholding the validity of mandatory arbitration provisions like those at issue here, Congress enacted the FAA to overcome judicial resistance to arbitration. *Italian Colors*, 133 S.Ct. at 2308-09; *Concepcion*, 563 U.S. at 339. To promote this purpose, "the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001).

The FAA mandates that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. It further provides that a party may seek a stay of litigation and petition a court of competent jurisdiction to compel arbitration. If the dispute is arbitrable, then the court must order that arbitration proceed in accordance with the agreement. *Id*. §§3, 4. The FAA applies to all contracts "affecting commerce," which "ordinarily signal[s] the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Consistent with this policy, where a contract contains an arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); see also *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005). "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail," *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal punctuation omitted), and any claims that "touch matters" covered by the agreement must be arbitrated. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985). If a court determines that an arbitration agreement is valid and enforceable, "the status of the other contract terms is for the arbitrator to decide." *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 807 (7th Cir. 2003) (internal quotation marks omitted).

### A.     The Valid Agreement by Defendants to Arbitrate Should be Enforced.

By executing the Note and Guaranty, Defendants agreed to arbitrate any dispute they may have with NextGear Capital. The broad language of the arbitration provision covers any past, present, or future claims that might raise under any legal theory. There is no question the agreements to arbitrate are valid, the disputes at issue here are within the scope of the agreements.

First, the arbitration agreements in the Note and Guaranty are valid agreements to arbitrate. A signed arbitration agreement is presumed to be valid and enforceable, and courts (or arbitrators) must resolve all doubts in favor of arbitration. 9 U.S.C. §2 (written arbitration agreements "shall be valid, irrevocable, and enforceable"). The arbitration provisions contain an internal opt-out process, and the Defendants failed to exercise the right to opt out.

Second, the claims at issue in this case are well within the broad scope of the arbitration agreements. The agreements cover "all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory."

(NextGear Note [Ex. A] §22(a)) An agreement to arbitrate claims "arising out of" a contract is extremely broad, covering "any dispute between contracting parties that is in any way connected with their contract." *Sweet Dreams Unlimited, Inc. v. Dial-a-Mattress Int'l.*, F.3d 639, 642-43 (7th Cir. 1993). The Defendants have therefore agreed that they would arbitrate NextGear Capital's breach of contract and conversion claims against them. *See, e.g., PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F.Supp.2d 734, 740-41 (N.D. Ill. 2010) (requiring arbitration of claims connected with plaintiffs' contracts).

This Court has held that arbitration provisions similar to the one here apply to claims or conduct that fall within the scope of the provision, whether they arose or occurred before or after the agreement was reached. *See, e.g., Ortiz v. Winona Mem'l Hosp.*, No. 1:02-CV-1975-JDT-TAB, 2003 WL 21696524, at *2 n.2 (S.D. Ind. June 4, 2003) (finding that "claims based on acts which occurred before [plaintiff] signed the arbitration agreement would seem to be subject to arbitration" because "[t]here is no temporal limitation" in arbitration agreement); *Furgason v. McKenzie Check Advance of Ind., Inc.*, No. IP00-121-C H/G, 2001 WL 238129, at *2 (S.D. Ind. Jan. 3, 2001) (ordering arbitration of claim arising from contract that did not contain arbitration agreement based on later loan contracts requiring arbitration of disputes "arising from … any prior agreement" between company and customer); *cf., e.g., In re Oil Spill by Amoco Cadiz Off Coast of France Mar. 16, 1978*, 659 F.2d 789, 795 (7th Cir. 1981) ("We conclude that the tort claims raised by plaintiffs-appellees must be submitted to arbitration as coming under Clause 1 of the [arbitration agreement], whether the torts are alleged to have been committed before or after the commencement of any salvage activity or before or after the execution of the [arbitration agreement]."); *Campbell v. Verizon Wireless, LLC*, No. 14-0517-WS-N, 2015 WL 416464, at *5

(S.D. Ala. Jan. 29, 2015) ("[N]or does the Arbitration Clause purport to be limited to disputes arising in a particular temporal span …. [T]his Court cannot and will not unilaterally solder such restrictions onto those agreements.").[1]

## CONCLUSION

For the foregoing reasons, NextGear Capital respectfully requests that the Court stay this case and order the parties to initiate arbitration of this matter, and for all other relief, at law or in equity, the Court deems appropriate.

Respectfully submitted,

*/s/ David J. Jurkiewicz*
David J. Jurkiewicz
Attorney No. 18018-53
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 684-5000
Facsimile: (317) 684-5173
djurkiewicz@boselaw.com

Attorney for Plaintiff, NextGear Capital, Inc.

---

[1] If there is any doubt regarding the scope of the arbitration agreement and the arbitrability of a dispute, those questions should properly be presented to the arbitrator. The arbitrator, rather than the court, has authority to decide whether the parties agreed to arbitrate a particular dispute when the parties have "clearly and unmistakably" demonstrated an intent to arbitrate that question. *AT&T Techs.*, 475 U.S. at 649; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the parties have clearly and unmistakably demonstrated such an intent by incorporating the Judicial Arbitration and Mediation Service ("JAMS") rules that give the arbitrator authority to resolve jurisdictional and arbitrability disputes. (NextGear Note [Ex. A] §22(c).) *Compare Gilman v. Walters*, 61 F.Supp.3d 794, 800-01 (S.D. Ind. 2014), *with* JAMS Comprehensive Arbitration Rule 11(b), *and* JAMS Streamlined Arbitration Rule 8(b).

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 5, 2020, a true and correct copy of the above and foregoing was filed electronically through the Court's CM/ECF system.  Service of this filing will be made on all ECF-Registered counsel by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.

/s/  *David J. Jurkiewicz*
David J. Jurkiewicz