IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NEXTGEAR CAPITAL, INC. | ) |
| | ) |
| Plaintiff | ) |
| | ) CASE NO. 1:20-cv-00354-TWP-DLP |
| v. | ) |
| | ) |
| PREMIER GROUP AUTOS, LLC, | ) |
| JAMES M. BLACKBURN, and | ) |
| EDWARD A. KESSLER. | ) |
| Defendants | ) |

### DEFENDANT EDWARD KESSLER'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS

In Plaintiff's Response in Opposition to Defendant Kessler's Motion to Dismiss, Plaintiff does not dispute the fact that this case centers around the Defendants' alleged failure to pay a debt from the alleged breach of a Promissory Note between Plaintiff, Nextgear Capital, Inc., and an automotive dealer, Defendant, Premier Group Autos, LLC ("Dealer"). Nor does the Plaintiff dispute the fact that the "debt" that Plaintiff claims is owed from the breach of the Promissory Note forms the basis of the Plaintiff's claim for conversion in Count IV of the Complaint.

Plaintiff argues that it has adequately plead conversion because the "debt" that is purportedly owed to Plaintiff consists of money; and money, under Indiana law, can form the basis of a claim for conversion. While Indiana law does recognize that – in very limited circumstances - a claim for conversion can be based on money, those limited circumstances are clearly not present here or pled in the Complaint. Money can support a conversion claim <u>only</u> if the money is "a determinate sum with which the defendant was entrusted to apply to a certain purpose" and with the "identical money" to be returned to the plaintiff. *E.g., David R. Manthey Estate ex. rel. Manthey v. Kruse, Inc.*, 2011 WL 5101802, *3-4 (N.D. Ind. 2011) (applying Indiana law); *Bowden*

*v. Agnew*, 2 N.E.3d 743, 750-51 (Ind.Ct.App. 2014) (citations omitted). The classic example of this is an escrow account. *See generally, Kopis v. Savage*, 498 N.E.2d 1266, 1270-71 (Ind. Ct. App. 1986) (seller's retention of $40,000 deposit related to property deal was not conversion since money was not placed in an escrow account).

Here, in the present case, Plaintiff's Complaint is devoid of any allegations that demonstrate that the alleged "debt" that is at issue represents a certain identifiable amount of money that Plaintiff entrusted to the Defendants to be applied for a certain purpose and where the "identical money," as opposed to the same amount of money, was to be returned to Plaintiff. Accordingly, Plaintiff's claim for conversion fails to state a claim upon which relief can be granted and Defendant Kessler's Motion to Dismiss Count IV of the Complaint should be granted.

**A. Plaintiff's Allegations in the Complaint Do NOT Present a Legally Cognizable Claim for Conversion.**

In its Response in Opposition to Defendant Kessler's Motion to Dismiss, Plaintiff acknowledges that it is well established that the "refusal to pay a debt will not generally support a conversion claim." *See Nat. Bank v. Kelly,* 31 N.E.3d 522, 532 (Ind., Ct. App. 2015) *citing, Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004).  Plaintiff does not dispute that this litigation centers around the Defendants' alleged failure to pay a debt.  Notwithstanding this fact, Plaintiff argues that it has stated a valid claim for conversion because the "Complaint alleges facts that could allow the Court to find that the Defendants 'retained specific funds that could be directly attributable to the plaintiff.'"  *See* (Dkt. 25 at p. 7).  The allegations in the Complaint, however, do not allege facts that demonstrate the money that Plaintiff claims is due and owing can be the subject of a claim for conversion as a matter of law.

Indiana courts make clear, "money may be the subject of an action for conversion only if it is capable of being identified as a special chattel." *Bowden*, 2 N.E.3d 743.  The money must be

"a determinate sum with which the defendant was entrusted to apply to a certain purpose." *Id.*, quoting, *Trietsch v. Circle Design Gro., Inc.*, 868 N.E.2d 812, 821-22 (Ind. Ct. App. 2007). *See, e.g., Newland Res., LLC v. Branham Corp.,* 918 N.E.2d 763, 776 (Ind.Ct.App.2009) (conversion claim dismissed because plaintiff "did not identify the money at issue as separate chattel"); *Tobin v. Ruman,* 819 N.E.2d 78 (Ind.Ct.App.2004) (law firm's wrongful withholding of lawyer's share of retained earnings constituted failure to pay a debt and did not constitute criminal conversion as a matter of law), *trans. denied; Huff v. Biomet, Inc.,* 654 N.E.2d 830 (wrongful withholding of sales commissions did not constitute criminal conversion where there was no evidence that the money was entrusted to defendant for a particular purpose or that defendant retained specific funds that could be directly attributed to plaintiff)(*abrogated on other grounds*); *Kopis*, 498 N.E.2d 1266 (holding that a seller's retention of a $40,000.00 deposit after the property deal collapsed was not criminal conversion because he was under no contractual obligation to "return the specific $40,000 which [purchaser] had given him" as the parties did not set up an escrow account or deliver the money to a third party for safekeeping). These cases make clear that if money is provided, even for a particular purpose (such as buying a car or being used in a real estate deal), conversion does not exist if the person is not required to give back the identical money provided, as opposed to the same amount of money. If all that is owed is the same amount of money, there is a debt, but no conversion. *Kopis*, supra.

In this regard, "Indiana courts have adopted the general rule that when there is no obligation to return **identical money**, but only the relationship of debtor and creditor, an action for conversion of money will not lie against a debtor." *David R. Manthey Estate ex. rel. Manthey v. Kruse, Inc.*, 2011 WL 5101802, *4 (N.D. Ind. 2011) (emphasis added). That is all we have here. As the Complaint alleges, Plaintiff loaned Defendant Premier Group Autos money to buy vehicles and it

3

now seeks to recoup the amount of the money loaned following the sale of the vehicles. Compl. ¶¶ 6-11, 37-38, 41. As these allegations clearly demonstrate, Plaintiff wants the amount it loaned but not the exact, specific money loaned, which obviously was used to purchase the vehicles. *Id*. That simply is not and cannot be an obligation to return the ***identical money***, so conversion does not exist as a matter of law. *Kruse, supra; Kopis, supra.*

In *Kruse, Inc.*, the United States District Court for the Northern District of Indiana (applying Indiana law) determined that an action for conversion cannot stand when a defendant failed to remit proceeds from the sale of the plaintiff's motorcycles to plaintiff. *David R. Manthey Estate ex. rel. Manthey v. Kruse, Inc.*, 2011 WL 5101802, *4 (N.D. Ind. 2011). In that case, the defendants entered into an agreement with the plaintiff to sell several motorcycles and other personal property of the plaintiff. *Id*. The agreement between the plaintiff and the defendant required the defendants to remit the sale proceeds to the plaintiff within thirty (30) days from the date the motorcycles were sold. *Id*. Defendants, however, failed to remit the sale proceeds from the sale of the motorcycles directly to the plaintiff as the agreement required. *Id*. In granting summary judgment in favor of the defendants on the plaintiff's claim for conversion, the court found that under these circumstances the failure of the defendants to remit specific sale proceeds from the sale of specific motorcycles acted to create a debt under the terms of the agreement between the plaintiff and the defendant, not a claim for conversion. *Id*. The court noted that the "auction proceeds were not akin to a determinate sum of money that the defendants were entrusted to apply to a certain purpose, and were not capable of being identified as [a] special chattel." *Id*. at *5. Thus, no conversion occurred.

Here, there are absolutely zero allegations that Plaintiff provided Defendants with a specific sum certain amount of money, that was to be entrusted to Defendants for a specific

purpose, then that *identical* money was to be returned to Plaintiff.  The very purpose of the loans at issue belies the return of the *identical* money, as the money loaned by Plaintiff was intended to be used to buy cars. Like the *Kruse* case discussed above, at best, the allegations set forth in the Complaint amount to a purported breach of the Note by failing to allegedly pay down the Note from the sale of collateral under the Note and Security Agreement.  The Defendants' alleged failure to remit the proceeds from the sale of the collateral creates a debt.  Just like in the *Kruse, Inc*. case, Defendants' alleged actions, even if true, do not create a cognizable claim for conversion.  Rather, the allegations in the Complaint demonstrate that this is a claim between a creditor and a debtor for the alleged failure to pay a debt—nothing more.  *See also Burget v. R.A.M. Entertainment, LLC*, 2015 WL 4490938 (N.D. Ind. 2015)(holding that the failure to pay on a promissory note does not present a cognizable claim for conversion). As a matter of law, that is not conversion.

In its Response, Plaintiff cites to *Midland-Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d 792 (Ind. Ct. App. 1986) and *G&M Hardware, Inc. v. Do it Best Corp.,* 2015 WL 4876248 (N.D. Ind. 2015) in support of its argument that it has stated a valid claim for conversion. Both cases, however, actually support Defendant Kessler's Motion to Dismiss.  For example, the *G&M Hardware* case affirms the general legal principles stated above and finds that a claim for conversion can exist when the chattel at issue that was converted consists of specific property, i.e., shares of stock.  *G&M Hardware*, 2015 WL 4876248 at *3.  In reaching its conclusion the court noted that: "[w]hat separates a legitimate conversion claim from a disguised debt action, however, is whether the plaintiff can point to some specifically identifiable property **as opposed to an amount of money**…here, [plaintiff] alleges that [defendant] has taken specific property: 1217 Preference Shares and 20 Common Shares of DIB stock owned by [plaintiff]." *Id* (emphasis added). In short, the *G&M* court found that specific shares of stock were converted—not just an

amount of money. Here, all we have is an amount of money allegedly owed from the alleged breach of a Promissory Note.

In *Midland*, at issue in that case were specific accounts that held specific sums of money that were entrusted to defendant for the benefit of the plaintiff and which sums were owned by plaintiff. *Midland*, 502 N.E.2d at 798-99. Specifically, at issue were reserve accounts that were not owned by the defendants, but rather the accounts belonged to the plaintiff, subject only to the defendant's right to charge back amounts pursuant to a pre-arranged formula. *Id*. In other words, the funds that were at issue in *Midland* were funds from a specific escrow account that was controlled by the defendant but the specific funds belonged to the plaintiff. *Id*. And, when the defendant in *Midland* refused to return the plaintiff the funds held in the escrow account, the court found that defendant exercised unauthorized control of those funds. *Id*. In reaching its conclusion, the *Midland* court noted that the specific reserve funds at issue in the account owned by the plaintiff were "entrusted to [the defendant] to be separately held and accounted for. The holdback reserve agreements did not create an obligation to repay a debt, instead they placed [the defendant] in a position of responsibility to return the remainder of these separately identified accounts at the appropriate time." *Midland*, 502 N.E.2d at 1355. Here, in the present case, unlike the facts in *Midland* where specific identifiable money in the escrow account existed, Defendant Kessler was not entrusted with a determinate sum of money for a specific purpose that was held in specific accounts for the benefit of the Plaintiff to be returned to Plaintiff.[1] Rather, the amounts that are

---

[1] *In re Clayton*, 778 N.E.2d 404 (Ind. 2002) is likewise distinguishable because, like an escrow account, it involved a lawyer purloining settlement proceeds intended for a client. *Roake v. Christensen*, 528 N.E.2d 789 (Ind.App.Ct. 1998) involved money earmarked for health insurance premiums, but the money was not used for the health insurance. Here, the loaned money was used for its intended to purpose (to buy cars) and we have an alleged failure to remit the proceeds from the sales of the cars, i.e. a failure to pay a debt, which is not conversion under Indiana law.

6

allegedly due and owing are from the alleged failure to pay a debt that was created by the terms of the Note in a lending relationship.

In short, Plaintiff's Complaint does not state a legally cognizable claim for conversion as Plaintiff has not alleged facts that show that the money at issue that was allegedly converted was "a determinate sum that [Defendant Kessler] was entrusted to apply to a certain purpose." As such, Plaintiff's claim for conversion fails to state a claim upon which relief can be granted and Defendant Kessler's Motion to Dismiss should be granted.

### B. Plaintiff's Conclusory Allegations of Defendant Kessler's Alleged Role in the Conversion Do NOT Pass Muster under *Iqbal* and its Progeny.

The allegations in paragraphs 40, 41 and 43 of the Complaint relating to Defendant Kessler's alleged role in the conversion are conclusory and do not present sufficient allegations to demonstrate Defendant Kessler's alleged involvement. First, a court must accept as true only factual allegations pled in a complaint—"[t]hreadbare recitals of the elements of a cause of action" that amount to "legal conclusions" are insufficient. *Bacewic v. Hassel*, 2018 WL 5004723, at *2 (N.D. Ind. Oct. 16, 2018). Here, Plaintiff's Complaint does not provide any factual recitation of Defendant Kessler's involvement in allegedly converting funds. In fact, the allegations are "upon information and belief," which is generally not appropriate when alleging conduct that is fraudulent in nature, such as is alleged in Count IV. *See LeSEA, Inc. v. LeSEA Broad. Corp.*, 379 F. Supp. 3d 732, 739, 2019 WL 2076609 (N.D. Ind. 2019).

Accordingly, because Plaintiff's Complaint does not meet the pleading requirements of *Iqbal* and its progeny, Count IV should be dismissed for this independent reason.

Respectfully submitted,

DELK McNALLY LLP


*/s/ Jason R. Delk*
Jason R. Delk, Atty. No. 24853-18
*Attorney for Defendant, Edward Kessler*

DELK McNALLY, LLP
211 S. Walnut Street
Muncie, IN 47305
Telephone: 765-896-9495
Facsimile: 888/453-0545

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all counsel of record via the Court's electronic case filing system this 7th day of April, 2020:

*/s/ Jason R. Delk*
Jason R. Delk

DELK McNALLY, LLP
211 S. Walnut Street
Muncie, IN 47305
Telephone: 765/896-9495
Facsimile: 888/453-0545