**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **NEXTGEAR CAPITAL, INC.**      ) | |
| ) | |
| **Plaintiff**    ) | |
| ) | **CASE NO. 1:20-cv-00354-TWP-DLP** |
| **v.**    ) | |
| ) | |
| **PREMIER GROUP AUTOS, LLC,**    ) | |
| **JAMES M. BLACKBURN, and**    ) | |
| **EDWARD A. KESSLER.**    ) | |
| **Defendants**    ) | |

## DEFENDANT, EDWARD A. KESSLER'S, ANSWER TO PLAINTIFFS' COMPLAINT FOR DAMAGES AND COUNTERCLAIM

Defendant, Edward A. Kessler (hereinafter "Kessler"), by counsel, DELK McNALLY LLP, hereby answers Plaintiff's Complaint for Damages as follows:

1. Plaintiff is a Delaware corporation with its principal place of business at 1320 City Center Drive, Suite 100, Carmel, Indiana 46032.

**ANSWER:** Kessler admits the allegations set forth in paragraph 1 of the Complaint.

2. Premier Group Autos LLC is a Florida Limited Liability Company having a physical address of 11 SW 12th Avenue, Suite 103, Building 59, Dania Beach, Florida 33004-3527.

**ANSWER:** Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 2 of the Complaint, and, therefore, denies the same.

1

3.     James Michael C Blackburn is an individual residing at 4875 NE 4th Avenue, Fort Lauderdale, Florida 33334-6050.

**ANSWER:**  Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 3 of the Complaint, and, therefore, denies the same.

4.     Edward Anthony Kessler is an individual residing at 5909 Murray Avenue, Bethel Park, Pennsylvania 15102-3449.

**ANSWER:**  Kessler admits the allegations set forth in paragraph 4 of the Complaint.

5.     Venue is proper in this Court as the Note, as that term is defined herein, grants the courts of Hamilton County, Indiana jurisdiction over all matters arising under the Note.

**ANSWER:**  The allegations set forth in paragraph 5 of the Complaint contain conclusions of law for which no response is required.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 5 of the Complaint, to the extent the allegations are inconsistent with the venue and jurisdictional laws of this Court.

6.     Dealer and Plaintiff entered into a Demand Promissory Note and Loan and Security Agreement (the "Note") whereby Dealer granted Plaintiff a security interest in all of its assets and properties wherever located, including, without limitation, all equipment of any kind or nature; all vehicles, vehicle parts and inventory then owned or thereafter acquired; purchase money inventory, the purchase of which was financed or floorplanned by Plaintiff for Dealer, of whatever kind or nature, and all returns, repossessions, exchanges, substitutions, attachments, additions,

accessions, accessories, replacements, and proceeds thereof; all accounts receivable, chattel paper, and general intangibles then owned or thereafter acquired by Dealer, together with the proceeds thereof; and all of Dealer's documents, books and records relating to the foregoing (the "Collateral"). A true and accurate copy of the Note is attached hereto and incorporated herein as Exhibit A.

**ANSWER:**  Kessler admits that on or about March 26, 2019, Premier Group Autos entered into a Promissory Note with NextGear Capital for floorplan financing for a credit line of no more than $150,000.00 ("NextGear Note").  Kessler further admits that the NextGear Note granted NextGear a security interest in all assets of Premier Group Autos.  Kessler denies that a true and accurate copy of the Note is attached to Plaintiff's Complaint as Exhibit A.  Unless specifically admitted, Kessler denies the allegations set forth in paragraph 6 of the Complaint.


7.     Blackburn executed an Individual Guaranty (the "Blackburn Guaranty") in favor of Plaintiff, whereby Blackburn guaranteed prompt and full payment to Plaintiff of all liabilities and obligations of Dealer pursuant to the Note. A true and correct copy of the Blackburn Guaranty is attached hereto and incorporated herein as Exhibit B.

**ANSWER:**  Kessler admits the allegations contained in paragraph 7 of the Complaint.


8.     Kessler executed an Individual Guaranty (the "Kessler Guaranty") in favor of Plaintiff, whereby Kessler guaranteed prompt and full payment to Plaintiff of all liabilities and obligations of Dealer pursuant to the Note. A true and correct copy of the Kessler Guaranty is attached hereto and incorporated herein as Exhibit C.

**ANSWER:** The "Kessler Guaranty" is a written document that speaks for itself. Thus, no response is required by Kessler. To the extent a response is required, Kessler admits that the "Kessler Guaranty" attached as Exhibit C to the Complaint appears to be a true and accurate copy of the "Kessler Guaranty." Regarding the remaining allegations set forth in paragraph 8 of the Complaint, Kessler denies the allegations set forth in paragraph 8 of the Complaint.

9.      Plaintiff advanced funds to Dealer and to certain third parties on Dealer's behalf for the purchase of inventory as Collateral pursuant to the terms of the Note.

**ANSWER:** Kessler denies the allegations set forth in paragraph 9 of the Complaint.

10.     The funds advanced by Plaintiff to Dealer and to certain third parties on Dealer's behalf have not been fully repaid as agreed.

**ANSWER:** Kessler denies the allegations set forth in paragraph 10 of the Complaint.

11.     Dealer defaulted under the Note by, inter alia, failing to make payments of principal and/or interest due thereunder.

**ANSWER:** The allegations contained in paragraph 11 of the Complaint contain conclusions of law for which no response is required. To the extent a response is required, Kessler denies the allegations set forth in paragraph 11 of the Complaint.

12.     As a result of the occurrence and continuance of an Event of Default, as that term is defined in the Note, Plaintiff declared the entire Indebtedness due.

**ANSWER:**  Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 12 of the Complaint, and, therefore, denies the same.

13.     As of November 4, 2019, the amounts due and owing under the Note total $357,588.73, exclusive of attorneys' fees and costs (the "Indebtedness").

**ANSWER:**  Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 13 of the Complaint, and, therefore, denies the same.

14.     The amount due from Dealer pursuant to the Note has not been paid.

**ANSWER:**  Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 14 of the Complaint, and, therefore, denies the same.

15.     As a result of Dealer's default, Plaintiff has incurred additional expenses under the Note, including, without limitation, attorneys' fees and court costs, all of which amounts Plaintiff is entitled to recover as the holder of the Note.

**ANSWER:**  Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 15 of the Complaint, and, therefore, denies the same.

## COUNT I—BREACH OF CONTRACT

16.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 15, the same as if set forth verbatim herein.

**ANSWER:**  Kessler repeats and incorporates by reference his answers to paragraphs 1 through 15 as if fully stated herein.


17.     As set forth above, Dealer defaulted under the Note by, inter alia, failing to make payments of principal and/or interest due thereunder.

**ANSWER:**  The allegations contained in paragraph 17 of the Complaint contain conclusions of law for which no response is required.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 17 of the Complaint.

18.     Despite demand for payment, Dealer has failed or refused to make payments for the amounts due and owing under the Note.

**ANSWER:**  Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 18 of the Complaint, and, therefore, denies the same.


19.     The Indebtedness is now due and owing and has not been paid by Dealer.

**ANSWER:**  Kessler denies the allegations set forth in paragraph 19 of the Complaint.


20.     Plaintiff owns and holds the Note and all rights to recover thereunder for Dealer's breach of contract.

**ANSWER:**  The allegations contained in paragraph 20 of the Complaint contain conclusions of law for which no response is required.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 20 of the Complaint.

21.    All conditions precedent to the right of Plaintiff to recover under the Note have occurred or have been waived.

**ANSWER:**  The allegations contained in paragraph 21 of the Complaint contain conclusions of law for which no response is required.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 21 of the Complaint.

**COUNT II—BREACH OF GUARANTY—JAMES MICHAEL C. BLACKBURN**

22.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 21 herein, the same as if set forth verbatim herein.

**ANSWER:**  Kessler repeats and incorporates by reference his answers to paragraphs 1 through 21 as if fully stated herein.

23.    As a condition of extending credit to Dealer, Plaintiff required Blackburn to execute the Blackburn Guaranty in favor of Plaintiff, whereby Blackburn guaranteed prompt and full payment of all liabilities and obligations of Dealer pursuant to the Note (the "Guaranteed Obligations").

**ANSWER:**  There are no allegations set forth in paragraph 23 of the Complaint against Kessler.  Thus, no response is required by Kessler.  To the extent a response is required, Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 23 of the Complaint, and, therefore, denies the same.

24.     Under the terms of the Blackburn Guaranty, Blackburn waived, inter alia, the right to receive notice of demand of any kind.

**ANSWER:**  There are no allegations set forth in paragraph 24 of the Complaint against Kessler.  Thus, no response is required by Kessler.  To the extent a response is required, Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 24 of the Complaint, and, therefore, denies the same.

25.     The Blackburn Guaranty provides for the recovery of all reasonable costs of collection and attorneys' fees.

**ANSWER:**  There are no allegations set forth in paragraph 25 of the Complaint against Kessler.  Thus, no response is required by Kessler.  To the extent a response is required, Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 25 of the Complaint, and, therefore, denies the same.

26.     Dealer is in default under the Note, and there are unpaid amounts due and owing by Dealer, all of which constitute Guaranteed Obligations of Blackburn.

**ANSWER:**  There are no allegations set forth in paragraph 26 of the Complaint against Kessler.  Thus, no response is required by Kessler.  To the extent a response is required, Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 26 of the Complaint, and, therefore, denies the same.

27.   Plaintiff owns and holds the Blackburn Guaranty and all rights to recover thereunder for Blackburn's breach of guaranty.

**ANSWER:**  There are no allegations set forth in paragraph 27 of the Complaint against Kessler.  Thus, no response is required by Kessler.  To the extent a response is required, Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 27 of the Complaint, and, therefore, denies the same.

28.   All conditions precedent to the right of Plaintiff to recover under the Blackburn Guaranty have occurred or have been waived.

**ANSWER:**  There are no allegations set forth in paragraph 28 of the Complaint against Kessler.  Thus, no response is required by Kessler.  To the extent a response is required, Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 28 of the Complaint, and, therefore, denies the same.

**COUNT III—BREACH OF GUARANTY—EDWARD ANTHONY KESSLER**

29.   Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 28 herein, the same as if set forth verbatim herein.

 **ANSWER:**  Kessler repeats and incorporates by reference his answers to paragraphs 1 through 28 as if fully stated herein.

30.   As a condition of extending credit to Dealer, Plaintiff required Kessler to execute the Kessler Guaranty in favor of Plaintiff, whereby Kessler guaranteed prompt and full payment of all liabilities and obligations of Dealer pursuant to the Note (as before, the "Guaranteed Obligations").

**ANSWER:**  Kessler lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in paragraph 30 of the Complaint, and, therefore, denies the same.

31.     Under the terms of the Kessler Guaranty, Kessler waived, inter alia, the right to receive notice of demand of any kind.

**ANSWER:**  The Kessler Guaranty is a written document that speaks for itself.  Thus, no response is required by Kessler.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 31 of the Complaint.

32.     The Kessler Guaranty provides for the recovery of all reasonable costs of collection and attorneys' fees.

**ANSWER:**  The Kessler Guaranty is a written document that speaks for itself.  Thus, no response is required by Kessler.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 32 of the Complaint.

33.     Dealer is in default under the Note, and there are unpaid amounts due and owing by Dealer, all of which constitute Guaranteed Obligations of Kessler.

**ANSWER:**  The allegations set forth in paragraph 33 of the Complaint contain conclusions of law for which no response is required by Kessler.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 33 of the Complaint.

34.     Plaintiff owns and holds the Kessler Guaranty and all rights to recover thereunder for Kessler's breach of guaranty.

**ANSWER:** The allegations set forth in paragraph 34 of the Complaint contain conclusions of law for which no response is required by Kessler.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 34 of the Complaint.

35.     All conditions precedent to the right of Plaintiff to recover under the Kessler Guaranty have occurred or have been waived.

**ANSWER:** The allegations set forth in paragraph 35 of the Complaint contain conclusions of law for which no response is required by Kessler.  To the extent a response is required, Kessler denies the allegations set forth in paragraph 35 of the Complaint.

### COUNT IV--CONVERSION

36.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 35, the same as if set forth verbatim herein.

**ANSWER:**  Kessler repeats and incorporates by reference his answers to paragraphs 1 through 35 as if fully stated herein.

37.     Pursuant to the terms of the Note, Plaintiff possesses an immediate and unqualified right to possession of any proceeds resulting from the sale of the Collateral.

**ANSWER:**  No response is required by Kessler as Count IV of Plaintiff's Complaint has been dismissed with prejudice.

38.     Dealer has sold no fewer than six (6) items of Collateral without remitting the proceeds from such sales as it was required to do under the terms of the Note.

**ANSWER:**  No response is required by Kessler as Count IV of Plaintiff's Complaint has been dismissed with prejudice.

39.     Blackburn and Kessler were and is aware of Dealer's sales of the Collateral out of trust.

**ANSWER:**  No response is required by Kessler as Count IV of Plaintiff's Complaint has been dismissed with prejudice.

40.     Upon information and belief, Blackburn and Kessler were actively involved in the day-to-day operations of Dealer and was responsible for, or participated in, the misappropriation of the proceeds of one or more items of Collateral.

**ANSWER:**  No response is required by Kessler as Count IV of Plaintiff's Complaint has been dismissed with prejudice.

41.     By failing to remit the proceeds of one or more items of Collateral, Dealer, Blackburn, and Kessler, knowingly and intentionally exercised unauthorized control over the property of Plaintiff.

**ANSWER:**  No response is required by Kessler as Count IV of Plaintiff's Complaint has been dismissed with prejudice.

42.     Pursuant to Indiana's Civil Action by Crime Victim Statute, codified at Ind. Code § 34-24-3-1 et seq., Plaintiff is entitled to seek treble damages from Dealer, Blackburn, and Kessler for any actual damages suffered as a result of the conversion committed by Dealer, Blackburn, and Kessler, as well as reimbursement of its fees, costs, and other enumerated expenses.

**ANSWER:**  No response is required by Kessler as Count IV of Plaintiff's Complaint has been dismissed with prejudice.

43.      Dealer, Blackburn, and Kessler committed willful and malicious injury to Plaintiff by misappropriating and converting the proceeds of certain Collateral.

**ANSWER:**  No response is required by Kessler as Count IV of Plaintiff's Complaint has been dismissed with prejudice.

44.      As of November 4, 2019, Plaintiff has suffered actual damages of not less than $344,978.19 resulting from the sales of at least six (6) items of Collateral out of trust.

**ANSWER:**  No response is required by Kessler as Count IV of Plaintiff's Complaint has been dismissed with prejudice.

WHEREFORE, Defendant Kessler requests that Plaintiff take nothing by way of its Complaint against Defendant Kessler, that judgment be entered in favor of Kessler and against Plaintiff, and for all other just and proper relief.

## AFFIRMATIVE DEFENSES

1.      Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiff's Complaint is barred by the doctrines of estoppel, fraud and illegality.

3.      Plaintiff's Complaint fails as Plaintiff failed to comply with all conditions precedent.

4.      Plaintiff's Complaint fails as a result of Plaintiff's own material breach of contract.

5.      Plaintiff's Complaint fails for lack of privity of contract, mutuality and assent.

6.      Defendant Kessler reserves the right to raise such additional defenses as may be established during discovery and by the evidence in this case.

## COUNTERCLAIM

Defendant, Edward Kessler, by counsel, for his Counterclaim against Plaintiff/Counterclaim Defendant, NextGear Capital, Inc., alleges and states as follows:

1.      Plaintiff, Counterclaim/Defendant, NextGear Capital, Inc. ("NextGear"), is a Delaware Corporation with its principal place of business located in Carmel, Indiana.

2.      Defendant/Counterclaimant, Edward Kessler ("Kessler"), is an individual who resides in Bethel Park, Pennsylvania and is a citizen of the state of Pennsylvania.

3.      Defendant, James Blackburn ("Blackburn"), upon information and belief, is a citizen of the state of Florida and resides in Fort Lauderdale, Florida.

4.      Blackburn and Kessler were members of Defendant, Premier Group Autos, LLC ("PGA").

5.      PGA was created for the business purpose of distributing high end, aftermarket, Land Rovers and Range Rovers utilizing the Overfinch brand.

6.      In early March 2019, Blackburn approached NextGear about trying to obtain a $1,000,000.00 line of credit for floor plan financing for use in the PGA business.

7.      NextGear did not extend the requested $1,000,000.00 line of credit to PGA, but NextGear did approve PGA for a floorplan financing line of credit in the amount of $500,000.00.

8.      In order to obtain the $500,000.00 floorplan financing line of credit from NextGear, PGA, Kessler and Blackburn were required to provide NextGear with a retainer in the amount of $100,000.00, in addition to signing certain loan documents, including a power of attorney document.

9.      Specifically, the Power of Attorney document NextGear required Kessler and Blackburn to sign in order to obtain the $500,000.00 line of credit granted NextGear with certain rights, including the authority to execute documents, draw on the line of credit, settle claims, and contact third parties in PGA's name.

10.     Kessler was not comfortable in signing the Power of Attorney document and objected to signing the document as part of the NextGear floorplan financing, as well as providing a $100,000.00 retainer.

11.     After Kessler objected to executing the Power of Attorney document and providing NextGear with the authority to act as set forth in the Power of Attorney document, Blackburn came back to Kessler and informed Kessler that NextGear would provide a floorplan financing line of credit in the amount $150,000.00, which did not require the execution of the Power of Attorney document, nor payment of the $100,000.00 line of credit.

12.     Accordingly, Kessler agreed to allow PGA to enter into a transaction with NextGear that would be for a limited amount of floor plan financing of no more than $150,000.00, which did not require the execution of the Power of Attorney document.

13.     As such, on or about March 27, 2019, PGA entered into a Promissory Note with NextGear for floorplan financing for a credit line of no more than $150,000.00 (hereinafter "NextGear Note"). The NextGear Note was signed electronically by Kessler and Blackburn as members of PGA. The NextGear Note also included personal guarantees by both Kessler and Blackburn, which were also signed electronically by Kessler and Blackburn. A true and accurate copy of the NextGear Note, Security Agreement and Guaranty is attached as Exhibit 1.

14.      Kessler received the NextGear Note, Security Agreement and Personal Guaranty electronically and signed the documents via electronic signature through an electronic signature

program.   The above-referenced Power of Attorney documents NextGear originally requested Kessler to sign were a part of the documents sent to Kessler for signature on March 26, 2019, but did not require electronic signature as Kessler was told that the Power of Attorney document was not required to be signed in order to obtain the $150,000.00 line of credit.

15.     After Kessler executed the NextGear Note on March 27, 2019, Kessler understood that PGA was then able to use the NextGear floorplan financing line of credit in the amount of $150,000.00.

16.     However, unbeknownst to Kessler, before NextGear would lend money under the NextGear Note and the $150,000.00 line of credit, NextGear still required Kessler and Blackburn to execute the Power of Attorney documents.

17.     On April 18, 2019, unbeknownst to Kessler and without Kessler's knowledge and/or consent, the Power of Attorney document (the "POA") was executed purportedly in Kessler's name.  A true and accurate copy of the forged and fraudulently executed POA is attached to the Plaintiff's Complaint and is contained within Exhibit A to the Plaintiff's Complaint.

18.     According to the attestation of the Notary Public, Arturo Mayoral, Senior Account Executive with NextGear, Kessler allegedly signed the POA in front of Mr. Mayoral in Broward County, Florida.

19.     However, Kessler did not sign the POA, and was not in Broward County, or even the state of Florida, on or around the date Kessler purportedly signed the POA.

20.     Kessler never signed the POA and never gave any person authority to sign the POA on behalf of Kessler.

21.     In fact, Blackburn, along with the assistance of NextGear and NextGear's Senior Account Executive, forged Kessler's signature on the POA, or caused Kessler's signature to be forged on the POA.

22.     After NextGear obtained the forged and fraudulently obtained POA, unbeknownst to Kessler, Blackburn began flooring vehicles and drawing on the line of credit.  Also, because NextGear now had the fraudulently obtained POA, NextGear and Blackburn increased the originally authorized line of credit from $150,000.00 to over $350,00.00, which, again, was done without Kessler's knowledge and/or consent.

23.     Again, unknown to Kessler, Blackburn ultimately caused PGA to default under the NextGear Note, which caused NextGear to file the instant lawsuit against PGA, Kessler and Blackburn, wherein NextGear claims Kessler is responsible for $357,588.73.

24.     As a result of NextGear and Blackburn's fraudulent and unlawful conduct, Kessler has been damaged.

## COUNT I—FORGERY

25.     Kessler repeats and incorporates by reference the allegations set forth in paragraphs 1 through 24 of his Counterclaim.

26.     Blackburn wrongfully and fraudulently signed Kessler's name and/or caused Kessler's signature to be forged to the subject POA so that Blackburn could obtain access to funds from NextGear.

27.     Kessler did not give authority to Blackburn to sign Kessler's name to the POA.

28.     In addition, in order for NextGear to obtain the business from PGA and enter into the lending relationship with PGA, NextGear's Senior Account Executive, Arturo Mayoral, acting as an agent/employee of NextGear, as well as a Florida Notary Public, aided and abetted Blackburn

in forging Kessler's signature to the POA and/or causing Kessler's signature to be forged to the POA.

29.     NextGear employee, Arturo Mayoral, while serving as a Florida Notary Public, and while acting within the course and scope of his employment with NextGear, attested that Kessler appeared before Mayoral and executed the subject POA.

30.     However, contrary to Mayoral's attestation as a Florida Notary Public, Kessler did not, in fact, appear before Mayoral to execute the subject POA and Kessler has never signed the subject POA.

31.     Mayoral's statements in the POA, as well as the false and fraudulent statements as a Notary Public, were false when made and were made with intent to defraud Kessler and to satisfy NextGear's lending requirements so that NextGear and Mayoral could obtain the business from PGA and enter into the lending relationship.

32.     Mayoral's false and fraudulent statements in the POA were made within the course and scope of Mayoral's employment with NextGear.

33.     Mayoral and NextGear's actions and assistance in making and possessing the forged and false POA constitutes forgery under Ind. Code § 35-43-5-2(d).

34.     In addition, NextGear is liable to Kessler for damages as a result of NextGear's concerted action in conspiring with Blackburn to forge the POA and falsely obtain Kessler's signature.

35.     As a result of NextGear's actions, Kessler has suffered damages.

36.     Under Indiana's Crime Victim Relief Act, NextGear is liable to Kessler for compensatory damages, treble damages and attorney's fees.

WHEREFORE, Kessler respectfully requests judgment in his favor and against NextGear, an award compensatory damages, treble damages, and attorney's fees, and for all other just and proper relief.

## COUNT II-DECEPTION

37.     Kessler repeats and incorporates by reference the allegations set forth in paragraphs 1 through 36 of his Counterclaim.

38.     NextGear employee, Arturo Mayoral, while serving as a Florida Notary Public, and while acting within the course and scope of his employment with NextGear, attested and swore on the POA document that Kessler appeared before Mayoral and executed the subject POA.

39.     However, contrary to Mayoral's attestation as a Florida Notary Public, Kessler did not, in fact, appear before Mayoral to execute the subject POA and Kessler has never signed the subject POA.

40.     Mayoral's statements in the POA, as well as the false and fraudulent statements as a Notary Public, were false when made and were made with intent to defraud Kessler and to satisfy NextGear's lending requirements so that NextGear and Mayoral could obtain the business from PGA and enter into the lending relationship.

41.     Mayoral's false and fraudulent statements in the POA were made within the course and scope of Mayoral's employment with NextGear.

42.     Mayoral and NextGear's actions in knowingly and intentionally making the false and misleading statements in the POA were done with the intent to obtain the business from PGA and to secure the lending relationship with PGA so that NextGear could benefit from the lending relationship.

43.     As a result of NextGear's actions, NextGear and Mayoral have committed the crime of deception (Ind. Code § 35-43-5-3).

44.     Kessler has been damaged by NextGear's unlawful conduct.

45.     In addition, NextGear is liable to Kessler for damages as a result of NextGear's concerted action in conspiring with Blackburn to forge the POA and in assisting Blackburn in knowingly and intentionally making false or misleading statements in the POA.

46.     Under Indiana's Crime Victim Act, NextGear is liable to Kessler for compensatory damages, treble damages and attorney's fees.

WHEREFORE, Kessler respectfully requests judgment in his favor and against NextGear, an award compensatory damages, treble damages, and attorney's fees, and for all other just and proper relief.

## COUNT III—VIOLATION OF FLORIDA STATUTE §117.05

47.     Kessler repeats and incorporates by reference the allegations set forth in paragraphs 1 through 46 of his Counterclaim.

48.     At all times relevant hereto, NextGear employee, Arturo Mayoral ("Mayoral"), served as a Senior Account Executive for NextGear.

49.     Mayoral also serves as a Florida Notary Public.

50.     As Mayoral is a Florida Notary Public, Mayoral's actions, conduct and duties while serving as a Florida Notary Public are governed by the Florida statutory code regarding Notaries Public.

51.     Specifically, Florida Statute § 117.05 sets forth the standards and requirements for Florida Notaries Public and the requirements Mayoral must comply with when serving as a Florida Notary Public.

52.     In accordance with Florida Statute §117.05(5), when Mayoral notarizes a document, while acting as a Florida Notary Public and within the course and scope of his employment with NextGear, Mayoral "…may not notarize a signature on a document unless he or she personally knows, or has satisfactory evidence, that the person whose signature is to be notarized is the individual who is described in and who is executing the instrument."

53.     However, contrary to Mayoral's duties and obligations, as set forth in Florida Statute §117.05, Mayoral wrongfully attested that Kessler appeared before Mayoral and signed the subject POA.

54.     Contrary to Mayoral's attestation as a Florida Notary Public, Kessler did not, in fact, appear before Mayoral to execute the subject POA and Kessler has never signed the subject POA.

55.     Mayoral's statements in the POA, while serving as a Florida Notary Public, and while acting within the course and scope of his employment with NextGear, were false when made and were made with the intent to secure the lending relationship with PGA.

56.     Mayoral's false and fraudulent statements in the POA were made within the course and scope of Mayoral's employment with NextGear.

57.     Because Mayoral's misconduct occurred while he was acting within the course and scope of his employment with NextGear, and in furtherance of NextGear's business, NextGear is liable to Kessler for all damages caused by Mayoral's misconduct in accordance with Florida Statute §117.05(e).

58.     As a result of NextGear and Mayoral's wrongful conduct, Kessler has suffered damages.

WHEREFORE, Kessler respectfully requests judgment in his favor and against NextGear, an award compensatory damages, treble damages, and attorney's fees, and for all other just and proper relief.

## COUNT IV—DECLARATORY JUDGMENT

59.     Kessler repeats and incorporates by reference the allegations set forth in paragraphs 1 through 58 of his Counterclaim.

60.     A true and justiciable controversy exists regarding Kessler's liability under the NextGear Note as a result of the fraud and forgery committed by Blackburn and NextGear.

61.     Kessler seeks a judicial declaration from the Court that he is not responsible and/or liable for the alleged breach of the NextGear Note as NextGear and/or Blackburn forged Kessler's name and/or signature to the subject POA, which document was required by NextGear to lend any money under the NextGear Note and to increase the amount of the line of credit under the NextGear Note.

62.     As a result of the fraud and forgery surrounding the entire transaction and the NextGear Note, Kessler should not be held liable for any amounts due and owing under the NextGear Note due to the forgery and fraud (as described herein) surrounding the execution of the "Loan Documents," as that term is described in the NextGear Note.

WHEREFORE, Kessler respectfully requests judgment in his favor and against NextGear, a declaration that Kessler is not liable for any damages for the alleged breach of the NextGear Note, and for all other just and proper relief.

## COUNT V—INDEMNIFICATION

63.     Kessler repeats and incorporates by reference the allegations set forth in paragraphs 1 through 62 of his Counterclaim.

64.     As a result of Blackburn, Mayoral and NextGear's misconduct and wrongful actions in forging the subject POA, NextGear is seeking to recover alleged damages from Kessler for amounts that were never authorized and/or approved by Kessler, but were only possible to have been allegedly incurred by PGA through the false and fraudulent POA.

65.     Accordingly, Kessler is entitled to indemnification from NextGear for any claims/damages NextGear has pursued against Kessler in the above-referenced litigation.

WHEREFORE, Kessler respectfully requests judgment in his favor and against NextGear, an award compensatory damages, attorney's fees, and all other just and proper relief.


Respectfully submitted,

DELK McNALLY LLP

*/s/ Jason R. Delk*
Jason R. Delk, Atty. No. 24853-18
*Attorney for Defendant, Edward Kessler*


DELK McNALLY, LLP
211 S. Walnut Street
Muncie, IN 47305
Telephone: 765-896-9495
Facsimile: 888/453-0545

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing has been served upon all counsel of record via the Court's electronic case filing system this 22nd day of March, 2021.

/s/ Jason R. Delk
Jason R. Delk

DELK McNALLY, LLP
211 S. Walnut Street
Muncie, IN 47305
Telephone: 765/896-9495
Facsimile: 888/453-0545