UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:20-cv-00354-TWP-DLP ) |
| PREMIER GROUP AUTOS, LLC, JAMES M BLACKBURN, and EDWARD A KESSLER, | ) ) ) ) |
| Defendants. | ) ) |
| JAMES M BLACKBURN, and PREMIER GROUP AUTOS, LLC, | ) ) ) |
| Counter Claimants, | ) ) |
| v. | ) ) |
| NEXTGEAR CAPITAL, INC., | ) ) |
| Counter Defendant. | ) |

**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM**

This matter is before the Court on a Motion to Dismiss Counterclaim filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Plaintiff/Counter-Defendant NextGear Capital, Inc. ("NextGear") (Filing No. 55). On April 1, 2020, Defendants/Counter-Claimants Premier Group Autos, LLC ("Premier") and James Michael C. Blackburn ("Blackburn") (collectively, "Counterclaim Plaintiffs") filed an Answer and Counterclaim against NextGear asserting tortious interference with a business relationship (Counts I and III), and tortious interference with a contractual relationship (Count II), (Filing No. 26 at 6–8). NextGear moves to dismiss the Counterclaim arguing "Counterclaim Plaintiffs have not stated a claim that NextGear [ ] tortiously

interfered with any relationships or contracts." (Filing No. 56 at 3). For the following reasons, the Court **grants** NextGear's Motion (Filing No. 55).

## I.  BACKGROUND

The following facts are not necessarily objectively true, but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Counterclaim and draws all inferences in favor of NextGear as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

NextGear is an automotive financing company that provides lines of credit to used car dealers, among others, to enable them to finance vehicle inventory. These lines of credit are often referred to in the industry as "floor plan" arrangements. A used car dealer who has a floor plan with NextGear can purchase a vehicle at auction, take it off the lot, and market it for resale, but defer payment on that vehicle until a later date. In turn, the borrowing dealer agrees to pay interest and fees to NextGear for the benefit of access to this funding. A dealer that does not have a floor plan agreement with NextGear Capital (or another finance company), on the other hand, must use its own funds to acquire vehicle inventory. The case underlying this Counterclaim arises out of a dispute between the parties concerning the alleged default of a Demand Promissory Note and Loan and Security Agreement (*see* Filing No. 1-3 at 2–3).

The Counterclaim Plaintiffs allege that Premier had been "negotiating alternate finance arrangements with a funding source other than" NextGear before "the alleged breach of the agreements." (Filing No. 26 at 6.) But a representative of NextGear contacted this unspecified alternate funding source "and made incorrect or false statements regarding Premier." *Id.* This caused "the alternate funding source to withdraw from the negotiations with Premier." *Id.* Absent this interference made without Premier's knowledge, consent, or permission, "the negotiations with

Premier's alternate funding source would have been concluded successfully, resulting in full payment to Plaintiff of all sums due." *Id.*

Additionally, a NextGear representative "contacted Overfinch North America, Inc. [("Overfinch")] and made incorrect or false statements regarding Premier, causing Overfinch North America, Inc. to cancel its distribution agreement with Premier." *Id.* Counterclaim Plaintiffs maintain that this conduct represents tortious interference of business and contractual relationships with Overfinch (Counts I and II), and tortious interference of a business relationship with the alternate funding source (Count III). *Id.* at 7–8. NextGear disagrees and moves to dismiss the Counterclaim in its entirety (Filing No. 55).

## II.  LEGAL STANDARD

Rule 12(b)(6) applies by its terms to counterclaims as well as to a plaintiff's claims. In reviewing a motion to dismiss a counterclaim under Rule 12(b)(6), the court must take the facts alleged in the counterclaim as true and draw all reasonable inferences in favor of the counterclaimant. The counterclaim must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations. The statement, however, must "give the [counter] defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the counterclaim must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially plausible, the counterclaim must allow "the court to draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Pleadings consisting of no more than mere

3

conclusions are not entitled to an assumption of truth, including legal conclusions couched as factual allegations and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555).

### III.  DISCUSSION

Counterclaim Plaintiffs allege that NextGear and its representatives tortiously interfered with Premier's business and contractual relationship with Overfinch (Counts I and II), and tortiously interfered with Premier's business relationship with the unnamed alternate funding source (Count III), (Filing No. 26 at 7–8). To state a claim for tortious interference with a *contractual* relationship, a plaintiff must allege (1) the existence of a valid and enforceable contract, (2) the defendant's knowledge of the existence of the contract, (3) the defendant's intentional inducement of the breach of contract, (4) an absence of justification for the defendant's conduct, and (5) damage resulting from the defendant's wrongful inducement of the breach. *Nat'l City Bank, Indiana v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997), supplemented on other grounds sub nom. *Nat'l City Bank, Ind. v. Shortridge*, 691 N.E.2d 1210 (Ind. 1998) (citing *Winkler v. V.G. Reed & Sons*, Inc., 638 N.E.2d 1228, 1235 (Ind. 1994); *Daly v. Nau*, 167 Ind. App. 541, 549 n.6, 339 N.E.2d 71, 76 n. 6 (1975)).

Though the elements of a claim for tortious interference with a *business* relationship are the same—except that the existence of a valid business relationship is substituted for the requirement of a valid and enforceable contract, *Geiger & Peters, Inc. v. Berghoff*, 854 N.E.2d 842, 852–53 (Ind. Ct. App. 2006) (citing *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 n.21 (Ind. 2001))—these types of claims also "require[] some independent illegal action." *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003) (citing *Watson Rural Water Co., Inc. v. Ind. Cities Water Corp.*, 540 N.E.2d 131 (Ind. Ct. App. 1989)). To state a claim for tortious interference with a business relationship, a plaintiff must plead—in addition to "some

independent illegal action" on the part of the defendant—"(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship" *McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 344 (Ind. Ct. App. 2016) (citations omitted).

NextGear contends that Counterclaim Plaintiffs' "claims are so vaguely pleaded that it is unclear what NextGear is supposed to have done to interfere with Counterclaim Plaintiffs' contract and business relationships or with which relationships NextGear is supposed to have interfered." (Filing No. 56 at 3.) Indeed, the "Counterclaim provides no explanation of how NextGear Capitol could have caused third parties to take action against Counterclaim Plaintiffs." *Id.* at 3–4. NextGear also argues that because the Counterclaim alleges no "illegal action performed in connection with the purported interference," both claims for tortious interference with a business relationship must fail. *Id.* at 4 (citing *Pierce v. Zoetis, Inc.*, No. 15-1900, 2016 WL 1015130, at *5–6 (7th Cir. Mar. 15, 2016)). Moreover, Counterclaim Plaintiffs have failed to adequately plead the requisite "absence of justification" because that element "'is established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another.'" *Id.* at 5 (quoting *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, No. 3:15-cv-00022-RLY-WGH, 2015 WL 7721223, at *8 (S.D. Ind. Nov. 30, 2015)). But, "ceasing to do business with someone who has failed to pay you," NextGear contends, "is a legitimate business purpose." *Id.* (citing *Am. Commercial Lines LLC v. Lubrizol Corp.*, No. 4:12-cv-00135-SEB-WGH, 2015 WL 5295128, at *4 (S.D. Ind. Sept. 10, 2015)). Finally, "the terms of the Note . . . explicitly authorizes NextGear Capitol to share 'any and all information regarding [Premier's] Credit Line or [Premier's] Relationship with [NextGear]'

with any and all persons that NextGear Capitol, in its sole discretion, deems reasonable." *Id.* Because of this authorization, Counterclaim Plaintiffs cannot "establish the absence of justification element" because they "must assert NextGear Capitol is liable for doing exactly what the Note authorizes." *Id.*

In response, Counterclaim Plaintiffs assert that their pled facts "qualify as 'short and plain statement[s]' showing why [they are] 'entitled to relief.'" (Filing No. 57 at 4 (quoting Fed. R. Civ. Pro. 8(a)(2)).) They contend, the facts "'give enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (quoting *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (internal quotations omitted)). In any event, "NextGear's arguments sound in summary judgment analysis," and the Counterclaim has sufficiently pled "that tortious interference by NextGear '*could* have happened.' *Id.* at 4–5 (citing *Estate of Davis*, 633 F.3d at 533 (internal quotations omitted)) (emphasis in original).

Following discovery, Counterclaim Plaintiffs maintain, the parties may "argue whether the tortious interference '*did* happen.'" *Id.* at 5 (emphasis in original). And though NextGear alleges that Counterclaim Plaintiffs "did not 'allege[] the element of absence of justification,'" they note that they alleged "that 'a representative of NextGear contacted Premier's alternate funding source and made *incorrect or false* statements regarding Premier . . . .'" *Id.* (citing (Filing No. 26 at 6) (emphasis Counterclaim Plaintiffs')). "By alleging that NextGear made incorrect or false statements to the relevant third party, [Counterclaim Plaintiffs are] signaling that the conduct was not justified." *Id.* Finally, despite NextGear arguing that "the terms of the Note allow for communication of information to third parties at the discretion of NextGear…. this provision does not pertain to incorrect or false information." *Id.* Besides, "Premier did not and would not have contracted to allow NextGear to share incorrect or false information with a third party." *Id.* at 6.

6

In reply, NextGear first argues that because Counterclaim Plaintiffs' "Response fails to articulate any independent illegal action taken by NextGear in regards to Defendants' business relationships[,] . . . the Court should dismiss Counts I and III of the Counterclaim." (Filing No. 58 at 2–3.) Moreover, the Counterclaim Plaintiffs "have failed to allege the absence of justification" in all the claims, even despite "signaling" that the conduct was unjustified by factually alleging that "NextGear made 'incorrect or false statements.'" *Id.* at 3.  NextGear notes that a claim must allege conduct "'that was intended for the sole purpose of causing injury and damage'"; in other words, unsupported allegations will not do. *Id.* at 3–4 (quoting *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (NextGear's emphasis removed)).  The *Morgan* plaintiff's bare assertion, for example, of "'no justification'"—which the Indiana Court of Appeals rejected as a "'conclusory statement'" that was "'not sufficient to allege the absence of justification'"—tracks Counterclaim Plaintiffs' bald allegation of interference "without justification." *Id.* at 4–5 (quoting *Morgan*, 736 N.E.2d at 1272).

NextGear contends the Counterclaim Plaintiffs cannot "obscure their pleading inadequacy by culling out statements from the Counterclaim that NextGear made 'incorrect or false' statements", especially when all of the statements are "void of any allegation that NextGear acted with malice exclusively directed to injury and damage." *Id.* at 5 (emphasis omitted).  In any event, Counterclaim Plaintiffs "gave consent and permission to all alleged communications by NextGear … to third parties pursuant to the terms of the Note." *Id.* at 6.

With respect to Counterclaim Counts I and III, the Court agrees with NextGear. Counterclaim Plaintiffs apparently concede that these claims for tortious interference with business relationships fail: they simply do not respond to NextGear's argument that the Counterclaim did not allege any "independent illegal action." *See Brazauskas*, 796 N.E.2d at 291. Counterclaim

7

Plaintiffs' failure to rejoin this deficiency noted in NextGear's lead brief means that they have effectively waived their claims. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because [the plaintiffs] did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments, these claims are waived."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 n.1 (7th Cir. 1996) (holding argument waived where appellants "failed to develop the argument in any meaningful manner"). Because Counterclaim Plaintiffs waived their Counts I and III, the Court **grants** NextGear's Motion as it relates to them.

As for Count II—the claim for tortious interference of a *contractual* relationship with Overfinch—the Court finds the pleading in the Counterclaim insufficient. This claim's essential element that a defendant's conduct was "unjustified" requires that a plaintiff "'set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified.'" *Morgan*, 736 N.E.2d at 1272 (quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 158, 545 N.E.2d 672, 677 (1989)). "This element," in fact, "is established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156–57 (Ind. Ct. App. 2005).[1] To try to supplement their nebulous claim that NextGear "and its representatives, *without justification*, intentionally induced

---

[1] The Indiana Supreme Court has also instructed that when determining the existence of justification, courts should consider "(a) the nature of the defendant's conduct; (b) the defendant's motive; (c) the interests of the plaintiff with which the defendant's conduct interferes; (d) the interests sought to be advanced by the defendant; (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff; (f) the proximity or remoteness of the defendant's conduct to the interference; and (g) the relations between the parties." *Winkler*, 638 N.E.2d at 1235 (citing *Restatement (Second) of Torts* § 767 (1977)). The through-line running within these various tests and prompts, though, "is whether the [defendant's] conduct has been fair and reasonable under the circumstances." *Id.*

8

a breach of the valid contract", Counterclaim Plaintiffs point to their factual allegation that "a representative contacted Overfinch . . . and *made incorrect or false statements* regarding Premier". (Filing No. 26 at 7, 8 (emphases added)).

In other words, NextGear lacked justification for making the statements because they were incorrect or false. But this does not satisfy the requirement that the conduct be "malicious" or that it be "exclusively directed to the injury and damage of another." *Morgan*, 736 N.E.2d at 1272. In *Morgan*, the court held that even an allegation that the defendant had "specifically intended to thwart efforts by the [contract parties] to enforce their rights" under the contract was inadequate to prove lack of justification because "this statement does not necessarily mean that such intent to 'thwart' was the *exclusive* purpose" of the defendant's actions. *Id.* (emphasis in original). Even accepting that a representative of NextGear "made incorrect or false statements"—as the Court must do at this motion-to-dismiss stage—these allegations do not plead the requisite exclusivity of malintent to render them unjustified. Because there are not "factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified," *id.*, this claim too cannot survive, and the Court **grants** NextGear's Motion to Dismiss as to it as well.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** NextGear Capital's Motion to Dismiss (Filing No. 55). Counterclaim Plaintiffs' counterclaims are accordingly **dismissed without prejudice**.[2] If it is not futile, Counterclaim Plaintiffs' are granted leave to file an Amended Counterclaim within **fourteen days** of this Order. If nothing is filed by that date, the dismissal will convert to one with prejudice.

---

[2] "'Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.'" *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 347 (7th Cir. 2018) (quoting *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)).

**SO ORDERED.**

Date: 4/30/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christina M. Bruno
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
cbruno@boselaw.com

Michael G Gibson
NEXTGEAR CAPITAL, INC.
michael.gibson@nextgearcapital.com

Brian Scott Jones
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
b.jones@boselaw.com

David J. Jurkiewicz
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
djurkiewicz@boselaw.com

Sarah Thompson Parks
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sparks@boselaw.com

Richard A. Rocap
ROCAP LAW FIRM LLC
rar@rocap-law.com

Ryan Lee Garner
ROCAP LAW FIRM LLC
rlg@rocap-law.com

Jason R. Delk
DELK MCNALLY LLP
delk@delkmcnally.com