# Exhibit "C"

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NEXTGEAR CAPITAL, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>PREMIER GROUP AUTOS, LLC, JAMES M. BLACKBURN, and EDWARD A. KESSLER,<br><br>*Defendants*. | CASE NO. 1:20-cv-00354-TWP-DLP |

**NEXTGEAR CAPITAL, INC.'S FIRST
INTERROGATORIES TO JAMES M. BLACKBURN**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, NextGear Capital, Inc. ("NextGear") requests that James M. Blackburn, answer the following interrogatories, separately and fully, in writing and under oath, within thirty days of service.

**DEFINITIONS**

1. The terms "Plaintiff," and "NextGear" mean NextGear Capital, Inc., and its predecessors, successors, agents, servants, employees, and/or representatives.

2. The terms "Premier," "PGA," and "Overfinch" mean and include Premier Group Autos, LLC, Premier Group Autos, LLC d/b/a Overfinch Miami, and Premier Group Autos, LLC doing business as any other name, and their predecessors, affiliates, parents, subsidiaries, successors, agents, servants, employees, representatives, owners, managers, members, shareholders, partners, officers, directors, attorneys, and assigns.

3. The term "Kessler" means Edward A. Kessler and his heirs, successors, beneficiaries, grantees, agents, representatives, assigns, and attorneys.

4. The term "Blackburn" means James M. Blackburn and his heirs, successors, beneficiaries, grantees, agents, representatives, assigns, and attorneys

1

5. The term "Lawsuit" means Case No. 1:20-cv-00354-TWP-DLP, in the United States District Court for the Southern District of Indiana.

6. The term "document" means both drafts and final versions of any written, typed, printed, recorded, graphic, photographic matter, or sound productions, however produced or reproduced, including copies, computer or data processing inputs or outputs in whatever form, including electronically stored information. These include, but are not limited to, all emails, letters, faxes, telegrams, cables, wires, notes, memoranda, accounts, studies, opinions, translations, charts, graphics, brochures, instruction sheets, advertisements, articles, excerpts, invoices, ledgers, books, publications, diagrams, statements, drafts, transcripts, agreements, contracts, minutes, records, diaries, voice recordings, journals, logs, work papers, manuals, calendars, governmental forms, computer or data processing inputs or printouts, microfiche or microfilm, videotapes, recordings, statistical compilations, slides, photographs, negatives, motion pictures or other film, samples or other physical objects of whatever nature, whether originals or reproductions, now or formerly in the possession, custody, access or control of you or any servant, employee, agent, representative or affiliate of yours. The term "document" also includes every copy where the copy is not an identical reproduction of the original or where the copy contains any commentary, marginal comment or any notation that may not appear in the original.

7. A document is deemed within your control if you have ownership, possession, or custody of the document, or may obtain a copy of it from any other person or public or private entity having possession thereof.

8. The term "ESI" means "electronically stored information" and includes, but is not limited to, all word processing documents, spreadsheets, slides, e mails, information concerning e mail (e.g., logs of e mail history and usage, header information, and deleted files), internet history files, preferences, graphical image files (including .jpg, .gif, .bmp, .pdf and TIFF files), databases, calendar and scheduling information, computer system activity logs and print reports, and all file fragments and backup files containing electronically stored information.  ESI also includes all information, files, or data on computer hard drives, solid state drives, removable drives, optical discs, tapes, floppy discs, and smartphones in your possession, custody or control; e mail repositories; and web-based document repositories that may contain relevant documents and information. ESI also includes all metadata.

9. The term "communications" means all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, and all other forms of oral or written intercourse.

10. The term "individual" means a natural person.

11. The term "identify" means:

    a. When used with reference to a document, state:

      i. The type of document (i.e., letter, memorandum, report, tape, printout, etc.);

     ii. The name of the individual who drafted or prepared the document;

    iii. The present or last known location of the document or the identity of the individual who has custody of the document; and

    iv. Such other information sufficient to enable the requesting party and its counsel to identify the document, such as the addressee(s), the approximate length in pages, persons who received copies, and a synopsis of its contents.

b. When used with reference to a person (as defined herein), state:

      i. Name;

     ii. Organizational status (i.e., corporation, partnership, etc.);

    iii. Business address; and

    iv. Other similar identifying information, with the exception that if the person to be identified is an individual then identify as in subparagraph I.

c. When used with reference to an individual, state his or her:

      i. Name;

     ii. Last known residence address and telephone number; and

    iii. Business address and employer, if any.

d. When used with reference to a communication:

      i. If written, identify the document as in subparagraph (a); and

     ii. If oral, state the date of the communication and the individuals who sent, received and otherwise participated or had knowledge of the communication, and state the substance thereof.

12. With respect to any document for which a privilege is being asserted, identify such document by stating:

a. The name, title and job or position of the document's author, its sender, and every person who received or saw the document or any of its copies;

b. The date of the document;

    c. The physical description of the document, including size, length, typed or handwritten, etc.;

    d. A brief description of the document's subject matter;

    e. The basis for the privilege asserted; and

    f. The name, title and job or position of all persons on whose behalf the privilege is asserted.

13. With respect to any conversation for which a privilege is being asserted, identify such conversation by stating:

    a. When the conversation occurred;

    b. Where the conversation occurred;

    c. The name, title and job or position of each person who was present at or during the conversation whether or not such conversation was in person or by telephone;

    d. A brief description of the conversation's subject matter;

    e. The basis for the privilege; and

    f. The name, title and job or position of all persons on whose behalf the privilege is asserted.

14. The terms "person" or "persons" mean and include all natural persons, firms, partnerships, associations, joint ventures, corporations and any other form of business organization or arrangement, as well as governmental or *quasi* governmental agencies. If a person is not a natural person, then it includes all natural persons associated with the entity.

15. The terms "relate" or "pertain" mean and include any and all documents that relate or pertain to the requested material or information in whole or in part, or that contain or reflect the information, requested in whole or in part. When referring to an allegation in any pleading, "relate" or "pertain" also mean and include any and all documents that tend to support or to disprove any allegation set out in the pleading.

16. The masculine gender of any word used in these interrogatories includes the feminine and the neutral.

17. The terms "You," "Your," and "Yours" mean the party or parties to whom these interrogatories are directed and its/their agent(s), servants, employees, representatives, and attorneys.

18. The terms "concerning" and "evidencing," or any variant thereof, include referring to, supporting, located in, considered in connection with, bearing, bearing on,

4

evidencing, indicating, reporting on, recording, alluding to, responding to, relating to, opposing, favoring, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting, being, and demonstrating.

19. The term "Complaint" means, collectively, Plaintiff's Original Complaint and any subsequent supplementation or amendment.

20. The term "Collateral" means all assets and property owned by Premier on or after March 26, 2019, wherever located, including, without limitation, all equipment of any kind or nature; all vehicles, vehicle parts and inventory, including, without limitation, purchase money inventory, the purchase of which was financed or floor planned by NextGear for Premier, of whatever kind or nature, and all returns, repossession, exchanges, substitutions, attachments, additions, accessions, accessories, replacements, and proceeds thereof; all accounts receivable, chattel paper, and general intangibles, together with the proceeds thereof; and all of Premier's documents, books and records relating to the foregoing.

21. The term "Kessler Counterclaim" means, collectively, Kessler's Original Counterclaim against NextGear and any subsequent supplementation or amendment.

22. The term "2019 Note" means the Demand Promissory Note and Loan and Security Agreement between NextGear and Premier dated on or about March 26, 2019, including all addendums and amendments thereto.

23. The term "2019 Blackburn POA" means the Power of Attorney executed by Blackburn on or about April 18, 2019.

24. The term "2019 Kessler POA" means the Power of Attorney purportedly executed by Kessler on or about April 18, 2019.

25. The term "2019 Blackburn Guaranty" means the Individual Guaranty executed by Blackburn on or about March 26, 2019.

26. The term "2019 Kessler Guaranty" means the Individual Guaranty executed by Kessler on or about March 27, 2019.

27. The term "SOT Vehicles" means the following:

| Stock Number | Date Floored | Vehicle Description | VIN | Original Amount Advanced | Principal Balance Remaining |
|---|---|---|---|---|---|
| 7 | 5/9/2019 | 2019 Land Rover Range Rover | SALGS5RE4KA551428 | $39,999.00 | $32,489.19 |
| 8 | 6/5/2019 | 2018 Land Rover Range Rover Evoque | SALVP2RX6JH295033 | $33,100.00 | $29,790.00 |
| 10 | 8/6/2019 | 2002 Hummer H1 TDSL | 137FA84352E197749 | $42,700.00 | $42,700.00 |

5

| 11 | 9/10/2019 | 2019 Land Rover Range Rover V8 | SALGS5RE6KA530077 | $45,000.00 | $45,000.00 |
| 12 | 9/11/2019 | 2019 Land Rover Range Rover V8 | SALGS5RE5KA548540 | $99,999.00 | $99,999.00 |
| 14 | 9/19/2019 | 2019 Land Rover Range Rover | SALGS2RE6KA546018 | $95,000.00 | $95,000.00 |

28. The term "vehicle" means automobiles, motorcycles, motorbikes, sport vehicles, and other machines.

29. All documents identified, in whole or in part, in response to an interrogatory should be produced in their entirety. Documents that in their original condition were stapled, clipped, or otherwise fastened together should be produced in such form. Where multiple copies of documents exist, each non-identical copy should be produced.

30. ESI in the form of documents should be provided in a Group IV, 300 dpi, single page black and white TIF format, (if color is necessary, documents will be provided in JPEG compression format), with a DII or OPT load file (which is used for Summation, Concordance, or other document management systems), with clearly defined document boundaries. ESI in the form of spreadsheets, databases, and other formats for which image production does not preserve all metadata should be produced in their native file formats. Where reasonably available (depending on the type of document), the following metadata fields should be populated on all documents produced as part of the load file: Begdoc, Enddoc, ParentID, AttachIDs, Author, BCC, CC, Docextension (i.e., filetype), FileName, Filesize, Custodian, Source Device, Source Path, Modified Date, Modified Time, Email Attachment Count, Email Attachment Name, Email Sent Date, Email Sent Time, Email topic (subject), From, and Recipient. A header row, or other documentation, explaining the field order of the data contained in the metadata load file should also be supplied by producing parties. This load file should be ASCII-delimited, preferably utilizing delimitation characters that will not be commonly found in meta-data fields (e.g. Concordance-default DAT delimitation vs. CSV delimitation), and clearly indicated in either the header row or accompanying documentation. OCR should be provided in document-level TXT files, where all OCR text associated with the particular documents of the production set is contained within separate TXT files. When producing native files, they should be numbered in the file name and produced in a separate folder with a cross-reference file in ASCII-delimited format matching load file formats utilized for other meta-data cross-reference files (e.g. Concordance DAT-delimitation).

31. Use of the singular shall be deemed to include the plural, and vice versa.

32. The term "all" includes "any," and vice versa.

33. The terms "and" and "or" should be interpreted as conjunctive, disjunctive, or both, depending on the context, so as to have their broadest meaning.

6

34. Whenever necessary to bring within the scope of an interrogatory all information or documents that might otherwise be construed to be outside its scope, the use of a verb in any tense shall be construed as the use of the verb in all other tenses.

35. Unless otherwise specified, these interrogatories require production of documents and ESI prepared, sent, received, used, produced, dated, in effect, or relating to events which occurred, up to and including the date on which you complete your response to these requests. Additionally, these requests are continuing in nature and you are under a duty to supplement or correct any responses that are incomplete or incorrect.

36. Unless otherwise specified, the applicable time period for these interrogatories is from January 1, 2019 to the present.

## INSTRUCTIONS

1. Each interrogatory must be answered with your entire knowledge, available from all sources, including all information and documents in your possession, custody or control, or in the possession, custody or control of any of your agents, officers, employees, partners, representatives, and attorneys, or otherwise available to you.

2. If you cannot answer any interrogatory fully, completely, and in detail, after exercising due diligence to make inquiry and secure the information necessary, so state, and: (1) answer such interrogatory to the extent possible; (2) specify the portion of such interrogatory that you are unable to answer fully, completely, and in detail; and (3) state the reason why such portion cannot be answered. If your response is qualified in any particular respect, set forth the details of such qualification.

3. If the attorney-client privilege, work product immunity, or any other privilege or protection is asserted as to any interrogatory, state the following:

(a) the specific ground(s) for not responding to the interrogatory in full;
(b) the bases for such a claim of privilege or immunity; and
(c) the information, document, or material for which such privilege or immunity is asserted, including the name of any document, the name, address and title of its author, each addressee, and each person to whom a copy of the document or thing has been sent or received.

4. If you object to any portion or subpart of a request for information or object to providing certain information requested, state your objection and answer any unobjectionable portion(s) or subpart(s) of the request for information and/or supply the unobjectionable information requested.

5. To the extent you allege that the meaning of any term in these interrogatories is unclear, then you are to assume a reasonable meaning, state that assumed reasonable meaning and answer the interrogatory on the basis of that assumed meaning.

6. If, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, you opt to produce documents in lieu of or in addition to a descriptive written response to an interrogatory, indicate for each document provided the number of the interrogatory to which it is responsive and the production number(s) of the documents identified for each response.

7. Please take notice that these interrogatories are submitted for the purposes of discovery and are not to be taken as waiving any objections to the introduction of any evidence on subjects covered by these interrogatories.

## INTERROGATORIES

1. Identify each and every person who participated, in any manner, in the preparation of the answers to these Interrogatories. For each person so identified, describe the nature of their involvement, and identify which specific interrogatory answers such person participated in any manner in preparing responses thereto.

**ANSWER:**

2. Identify each and every person known to You with knowledge of facts underlying Your execution of and signature on the 2019 Note, the 2019 Blackburn Guaranty, and the 2019 Blackburn POA, including each person's last known address, employer, and job title.

**ANSWER:**

3. Identify all facts concerning Your claim that Your performance under the 2019 Note and the 2019 Blackburn Guaranty was excused due to NextGear's "interference in certain business relationships of Premier and Blackburn, rendering their performance impossible," as alleged in Your third Affirmative Defense.

**ANSWER:**

8

    4.   Identify all facts concerning Your claim that NextGear waived its claims against You, as alleged in Your first Affirmative Defense.

**ANSWER:**


    5.   Identify every breach of contract you contend was committed by NextGear, as alleged in Your second Affirmative Defense, and for each, state the specific contractual provision you contend NextGear breached, the date of the breach, describe how NextGear breached the specific provision, state whether such breach caused You any damages, state the specific types and amounts of damages You purportedly suffered as a result of the alleged breach, and describe all efforts you made to mitigate any damages You allege You suffered as a result of any alleged breach by NextGear.

**ANSWER:**


    6.   Identify any and all payments and credits made by You or on Your behalf as payment on any and all "Liabilities" as that term is defined in the 2019 Blackburn Guaranty.

**ANSWER:**


    7.   Identify any and all payments to NextGear made by You or on Your behalf, and for each, state the date of the payment, the amount of the payment, and the purpose of the payment.

**ANSWER:**

8. Identify any and all payments, distributions, dividends, and/or any other receipts of money or property You received, directly or indirectly, from Premier or Kessler, and for each state:

- The amount You received (or the value of the property You received, if no specific sum of money was received);
- If You received property rather than a specific sum of money, a description of the property You received;
- The date You received such money or property;
- The identity of any agents, servants, employees, or representatives of Premier or Kessler with knowledge of your receipt of such money or property; and
- Whether you still possess such money or property received, or any subsequent proceeds thereof.

**ANSWER:**

9. Identify any and all payments, distributions, dividends, and/or any other transfers of money or property You made, directly or indirectly, to Premier or Kessler, and for each state:

- The amount You paid (or the value of the property You transferred, if no specific sum of money was paid);
- If You transferred property rather than paid a specific sum of money, a description of the property You transferred;
- The date You paid or transferred such money or property; and

10

- The identity of any agents, servants, employees, or representatives of Premier or Kessler with knowledge of your payment or transfer of such money or property.

**ANSWER:**

10. Identify any and all documents and communications between You and Premier or Kessler concerning NextGear, including but not limited to documents and communications concerning any vehicles financed by NextGear; the 2019 Note; the 2019 Blackburn Guaranty; the 2019 Blackburn POA; the 2019 Kessler Guaranty; or the 2019 Kessler POA.

**ANSWER:**

11. Identify any and all documents and communications between You and any third party concerning NextGear, including but not limited to documents and communications concerning any vehicles financed by NextGear; the 2019 Note; the 2019 Blackburn Guaranty; the 2019 Blackburn POA; the 2019 Kessler Guaranty; or the 2019 Kessler POA.

**ANSWER:**

12. Identify, by name, current address, and current telephone number, any and all bookkeepers, accountants, tax preparers, financial advisors, and any other persons who at any time on or after March 26, 2019 had possession of or access to Your personal books and records.

11

**ANSWER:**

13. Identify all financial accounts maintained by You at any time from March 26, 2019 to the present, including but not limited to, the name of the bank or other financial institution, the name of the account holder, the account number, the date(s) on which such account was opened and/or closed, the nature and purpose of the account, and identify all persons who had signatory authority on each account.

**ANSWER:**

14. Identify all persons who wrote or signed any checks, or otherwise had access to funds in any or all of Your personal financial accounts from March 26, 2019 to the present.

**ANSWER:**

15. For each of the SOT Vehicles, describe the circumstances under which each vehicle was sold, transferred, or otherwise disposed of by You, including, but not limited to, the manner in which such vehicle was sold, transferred, or otherwise disposed; the date such vehicle was sold, transferred, or otherwise disposed; the full name, address, telephone number, e-mail address, and all other contact information known to you of the person or entity to whom the vehicle was sold, transferred, or otherwise disposed; who authorized the sale, transfer, or other disposition of the vehicle; if and how a new title was obtained for the vehicle; when and how You became aware of such sale, transfer, or other disposition of the vehicle; the date, amount, name of payor, and method of payment for any payments received by You, Kessler, Premier, or any other

12

person or entity in consideration for such sale, transfer, or other disposition of the vehicle; and the total payments received by You, Kessler, Premier, or any other person or entity for each vehicle.

**ANSWER:**

16. Identify all persons who had authority to determine how the proceeds from the sale of any of Premier's inventory would be spent, invested, deposited, transferred, or otherwise disposed in any way whatsoever at any time between March 26, 2019 and the present.

**ANSWER:**

17. Identify any and all documents and communications between You and any other person or entity concerning any or all of the SOT Vehicles.

**ANSWER:**

18. Identify the dates, amounts, and payees of all payments made by You, Kessler, or Premier from the proceeds of the sales of any or all of the SOT Vehicles.

**ANSWER:**

19. Identify all of Your debts and other financial obligations that existed as of March 26, 2019, including the name, address, telephone number, and all other contact information of the person or entity to whom such debt was owed; the amount of such debt or other financial obligation as of March 26, 2019; the identity of any co-obligor or

13

guarantor of such debt or other financial obligation; and the amount currently owed on such debt or other financial obligation.

**ANSWER:**

20. Identify all of Your debts and other financial obligations that You incurred between March 26, 2019 and the present, including the name, address, telephone number, and all other contact information of the person or entity to whom such debt was owed; the highest amount owed at any time between March 26, 2019 and the present; the identity of any co-obligor or guarantor of such debt or other financial obligation; and the amount currently owed on such debt or other financial obligation.

**ANSWER:**

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing statements are true and accurate to the best of my knowledge, information, and belief.

_____
JAMES M. BLACKBURN

Date: _____

| | |
|---|---|
| Dated: May 27, 2021 | Respectfully submitted, |
| | /s/ Brian S. Jones |
| | DAVID J. JURKIEWICZ<br>Attorney No. 18018-53<br>BRIAN S. JONES<br>Attorney No. 29578-49<br>**BOSE MCKINNEY & EVANS LLP**<br>111 Monument Circle, Suite 2700<br>Indianapolis, IN 46204<br>Telephone: (317) 684-5000<br>Facsimile: (317) 684-5173<br>djurkiewicz@boselaw.com<br>b.jones@boselaw.com<br><br>**ATTORNEYS FOR NEXTGEAR CAPITAL, INC.** |

15

## CERTIFICATE OF SERVICE

I certify that on May 27, 2021, a true and correct copy of the above and foregoing was served via email on all counsel of record.

/s/ Brian S. Jones
BRIAN S. JONES

4118037