# Exhibit "G"

## DISTRIBUTION AGREEMENT

This International Distribution Agreement ("Agreement") is made effective as of ..Monday..C3rd..December..18.. ("Effective Date") by and between Premier Group Autos LLC ("Distributor") with company registration number LI800263245 with its principal place of business at 1500 Cordova Road, 206 Fort Lauderdale, Florida, 33316 and Overfinch North America Inc. ("OVERFINCH") with its principal place of business at 500 Stinson Drive, Danville VA 24540 USA.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

I. **DEFINITIONS**

1.1 "Conversion" means exterior products including body styling package, badges, lettering, wheels and tires and the fitment thereof by OVERFINCH.

1.2 "Conversion Value" means the value of the Products and services supplied by OVERFINCH as set out in the relevant order acceptance and / or invoice. For the avoidance of doubt, the Conversion Value does not include taxes, duties, freight and transportation charges and similar costs, all of which are payable by the Distributor.

1.3 "Customers" means any current or potential purchasers or end-users of the Products.

1.4 "Initial Term" means twelve months from the Effective Date.

1.5 "Introducers Fee" means an amount in US dollars to be agreed on a deal by deal basis between the parties.

1.6 "Order Value" means the total value of the order including the Vehicle Value and Conversion Value as set-out in such order that is accepted by OVERFINCH.

1.7 "Products" means any Overfinch products sold by OVERFINCH to Distributor for resale to Customers pursuant to the terms of this Agreement, and any related services (including OVERFINCH training).

1.8 "Term" means twelve months commencing from the Effective date and thereafter each twelve-month period following the anniversary of the Initial Term.

1.9 "Territory" means the utility and industrial market segments in South Florida (Miami Dade, Broward, Palm Beach, Monroe, Collier, Lee, Henry, Florida Keys and the Glades) only.

1.10 "Vehicle" means a new vehicle that OVERFINCH has manufactured parts for and is capable of being modified by OVERFINCH.

1.11 "Vehicle Value" means the cost of the vehicle as invoiced to Overfinch by the supplying automotive dealer. For the avoidance of doubt, the Vehicle Value does not include state or local taxes, freight and transportation charges and similar costs, all of which are payable by the Distributor.

## II. RELATIONSHIP

2.1 **Appointment.** OVERFINCH appoints the Distributor as an exclusive, independent distributor of Products to Customers in the Territory. Distributor accepts such appointment and agrees to devote sufficient time and resources to the performance of its duties hereunder. Distributor shall promptly notify OVERFINCH of all inquiries related to Products from persons or entities located outside the Territory. Distributor shall notify OVERFINCH of all changes in personnel assigned to its account.

OVERFINCH reserves the right to transact any business to retail Customers within the Territory that are as a result of online sales made via its website or other online platform and / or sales resulting from any local or national brand advertising events that it has organized and participated in.

OVERFINCH may terminate the exclusivity under this Agreement upon thirty (30) days notice at any time that the Distributor has placed no orders with OVERFINCH for any rolling two-month period, providing that the Distributor has not already ordered, prior to the commencement of that two-month

JB AS.

period, Products that would exceed the minimum amount required by the end of that two-month period.

2.2 **Independent Contractor.** Distributor is an independent contractor. Distributor is not an employee, representative, or agent of OVERFINCH. Distributor is not authorized to make any agreement, warranty or representation on behalf of OVERFINCH, or to create any liability or obligation, express or implied, on behalf of OVERFINCH. Distributor shall not appoint any third party to promote or sell Products or otherwise perform any of Distributor's obligations hereunder. Distributor shall conduct its business in its own name, maintain its own office and be responsible for its expenses, personnel and operations.

2.3 **Direct Sales.** OVERFINCH reserves the right to honor online store orders from Customers that are based within the Territory, with no compensation to the Distributor.

During the Initial Term and any renewal Term, in the event that the Distributor can demonstrate via an information registration service acceptable to OVERFINCH that is has recorded a Customer's details at an event it attended and / or hosted, whereby it introduced that Customer to the Overfinch brand and that Customer is within the Territory and would like to place an order to purchase Products from OVERFINCH directly within a six month period from that introduction, OVERFINCH shall refer that Customer to the Distributor. In the event such Customer is located outside of the Territory OVERFINCH shall pay the Distributor an Introducers Fee.

The Distributor is required to submit the information registration record to OVERFINCH on a monthly basis and within 5 working days following an event that the Distributor has hosted.

OVERFINCH shall maintain an information registration service whereby it records Customer's details at any brand advertising event that it attends and / or hosts.

2.4 **Sales Terms.** OVERFINCH may decline to quote any potential sale and may accept or reject any order, providing that such declination or rejection is based upon a reasonable commercial decision.

All sales of Products by OVERFINCH shall be subject to the OVERFINCH Sales Terms in effect at time of sale, as reflected on the OVERFINCH sales order acknowledgment, to the extent that they do not conflict with the provisions of this Agreement. By placing each order hereunder, Distributor confirms

JB AS

its agreement with and acceptance of the OVERFINCH Sales Terms. Distributor must extend, honor and perform the warranty services as set forth in the OVERFINCH Sales Terms to Customers. OVERFINCH shall be bound only by the warranty applicable to parts as set forth in the applicable OVERFINCH Sales Terms, and Distributor shall indemnify OVERFINCH against any additional warranty terms. Any warranty or other sales terms required by law in the Territory must be provided by Distributor, and Distributor shall indemnify OVERFINCH for any failure to comply with any such requirements. Distributor must also notify OVERFINCH if any of its standard warranty or other sales terms conflict with any law in the Territory.

During the Initial Term and any subsequent renewal Term thereafter the Distributor shall notify OVERFINCH promptly of any potential warranty claim relating to its Products. Any warranty claims are at the sole decision of OVERFINCH and any costs or expenses incurred by the Distributor shall only be reimbursed providing these have been pre-authorized in writing by OVERFINCH.

OVERFINCH Conversions/Products shall be ordered on a monthly basis. There is no guarantee in respect of the delivery date of any Vehicles. OVERFINCH has no control over the lead time of the Vehicle from the manufacturer. It is not guaranteed, and it is dependent upon the model year of the Vehicle being ordered, but it is envisaged that a Vehicle will be delivered with the Conversion within 16 weeks from OVERFINCH'S acceptance of a Vehicle order. OVERFINCH shall update the Distributor on lead times of Vehicles as and when it receives updates from the supplying automotive dealer.

Upon OVERFINCH's acceptance of an order submitted by the Distributor for a Vehicle and Conversion, the Distributor is required to comply with the following payment terms:
1.) 10% non-refundable deposit of the total Order Value upon OVERFINCH'S acceptance of the order;
2.) Remaining balance of the Vehicle Value to be paid on or before collection of the Vehicle by OVERFINCH from the Land Rover dealer;
3.) Remaining balance of the Conversion Value to be paid upon completion of the conversion by OVERFINCH and before delivery of it to the Distributor.

Upon OVERFINCH's acceptance of an order submitted by the Distributor for a Conversion, the Distributor is required to comply with the following payment terms:
1.) 10% non-refundable deposit of the total Order Value upon OVERFINCH'S acceptance of the order;

JB

PAG-B0035

2.) Remaining balance of the Conversion Value to be paid upon completion of the conversion by OVERFINCH and before delivery of it to the Distributor.

Payment must be made in cleared funds via wire transfer or cheque only.

All orders are exclusive of state and local taxes, freight and transportation charges and similar costs, all of which should be paid by the Distributor.

Prices for Products shall be those provided in writing by OVERFINCH to Distributor and may be modified by OVERFINCH from time to time. Distributor shall pay all amounts in U.S. Dollars.

Distributor shall provide OVERFINCH with its standard end-user price list upon request.

Distributor acknowledges that OVERFINCH pricing fully compensates Distributor on an ongoing basis for customer and market development, for providing product support and services in the Territory.

Delivery of the Products shall take place at OVERFINCH'S place of business. Acceptance of any change to the delivery point requested by the Distributor shall be at OVERFINCH'S sole discretion and at the Distributors risk and expense.

## 2.5   Minimum Annual Order Quantity

The Distributor is required to place orders for a minimum of 36 OVERFINCH Conversions or Overfinch Products to the value of $1,500,000.00 during the Initial Term. One Conversion/Product order shall be placed upon the Effective Date of this agreement. Thereafter the remaining minimum order quantity shall be spread in equal instalments across each month of the Initial Term, with the Distributor ordering a minimum of 3 Conversions or the equivalent value in Products each month.

Unless notified by OVERFINCH in writing 30 days prior to the expiry of the Initial Term, the contract shall automatically renew for a further Term. The minimum annual order requirement for any such renewal Term shall be an increase of 10% of the minimum annual order value required in the previous Term.

The initial minimum annual order shall commence on the above Effective Date, with each subsequent minimum annual order commencing upon each renewal Term.

*JB PS.*

PAG-B0036

The Distributor has the intention to open an Overfinch showroom within the Territory within 8 to 12 months from the Effective Date of this agreement. Upon the Distributor confirming it has finalized its plans in respect of that showroom, both parties shall enter into further discussions regarding the terms of this agreement in view of the investment proposed by the Distributor and document any such variation to the terms hereof that are agreeable between both parties at that time. Further, subject to the Distributor's performance throughout the Initial Term, the parties may enter into discussions regarding distributorships in other potential territories in the United States of America.

### 2.6   Initial Order

Upon execution of this Agreement, the Distributor shall submit an initial order for an OVERFINCH Conversion.

### III.   RESPONSIBILITIES

3.1   **Promotion.** Distributor shall devote sufficient time and resources to successfully promote and sell Products to Customers. Distributor shall ensure that all sales personnel are properly trained and possess the appropriate technical competency to promote Products effectively. Distributor shall respond in a timely and professional manner to all inquiries from and referrals to Customers. Distributor shall furnish any market information requested by OVERFINCH, including without limitation annual sales plans, monthly sales reports, monthly forecasting reports, sales forecast updates and explanations of any discrepancies between forecasted and actual sales. Distributor shall attend any required OVERFINCH sales training.

3.2   **Marketing.** The Distributor is required to advertise and promote the Products on a regular basis on an appropriate marketing platform akin to the prestige of the brand. The Distributor should submit a proposed marketing plan to OVERFINCH for its review and written consent.

OVERFINCH may from time to time carry out local and / or national brand advertising and marketing activities, within or outside of the Territory and request the Distributor to make a reasonable contribution to such costs and expenses associated and incurred in respect of that brand advertising. OVERFINCH shall provide reasonable notice of anticipated costs and expenditure for such brand advertising.

*JB AS.*

3.3     **Events.** The Distributor shall host 10 exclusive events during the course of the initial term in order to promote the OVERFINCH brand and Vehicles. OVERFINCH will provide marketing material and product support for use at such events, upon reasonable notice and as required. The Distributor shall cover the reasonable costs and expenses incurred by OVERFINCH in this regard.

3.4     **Customer and Product Support.** Distributor shall follow up and maintain contact with Customers to ensure customer satisfaction. Distributor shall ensure that Customers receive information about any recalls on Products provided to Distributor. Distributor shall employ personnel who are educated in the field and sufficiently knowledgeable of Products to perform the technical support and services required hereunder.

3.5     **Technical and Marketing Materials.** Distributor shall maintain an adequate inventory of current OVERFINCH technical and marketing materials to promote Products. Distributor may not use any technical or marketing materials not provided by OVERFINCH. Prior written approval for the use of any marketing material should be obtained from OVERFINCH. Distributor shall provide any translations of OVERFINCH technical and marketing materials to OVERFINCH.

3.6     **Compliance.** Distributor shall comply with all governmental laws, regulations and orders of all relevant jurisdictions that may be applicable to Distributor under this Agreement, including without limitation the U.S. Export Administration Act, the U.S. Foreign Corrupt Practices Act and all licensing and registration requirements in the Territory. Distributor shall advise OVERFINCH with respect to any warranty requirements, noise ordinances, safety standards, specifications and other requirements applicable to Products imposed by law, regulation or order in the Territory. Distributor shall notify OVERFINCH of the existence and content of any provision of law in the Territory or any other applicable law that conflicts with any provision of this Agreement or any other document, such as warranty or sales terms, at the time of execution or at any time thereafter.

3.7     **Training.** OVERFINCH shall provide sales and technical training and support as appropriate. The Distributor shall cover the reasonable costs and expenses incurred by OVERFINCH in providing this.

JB AS.

## IV. INTELLECTUAL PROPERTY AND CONFIDENTIALITY

4.1. **Intellectual Property.** Distributor acknowledges that trademarks, service marks, trade dress, patents, copyrights, trade secrets, licenses and any other intellectual property used by OVERFINCH are the sole property of OVERFINCH. Distributor shall not use such OVERFINCH property except in the normal course of promoting Products, or promoting OVERFINCH in general, under the terms of this Agreement. Distributor shall not remove or alter any trademarks, service marks or trade dress that identify OVERFINCH, nor use any trademarks, service marks, trade dress or any other intellectual property that, in the sole discretion of OVERFINCH, are confusingly similar to those of OVERFINCH. Distributor shall make every effort to safeguard the intellectual property of OVERFINCH, and shall immediately notify OVERFINCH in writing of any infringement or suspected infringement and cooperate with OVERFINCH, as OVERFINCH deems necessary, to protect such property against infringement (such cooperation to be at OVERFINCH expense unless the infringement arose from Distributor acts or omissions). Distributor shall comply with the OVERFINCH INTELLECTUAL PROPERTY POLICY, as provided by OVERFINCH. OVERFINCH my immediately terminate this Agreement for any violations of these intellectual property requirements. Upon termination of this agreement the Distributor shall not use the intellectual property.

4.2 **Confidentiality.** All confidential information provided, from time to time, by OVERFINCH to Distributor has been or is provided in strict confidentiality, and can neither be disclosed by Distributor to third parties during the term of this Agreement or after termination or expiration, nor used by Distributor for purposes other than those set forth in this Agreement. Distributor shall maintain such information in strict confidence during the term of this Agreement and for five (5) years after termination or expiration, except when disclosure of such information is required by law. Within thirty (30) days of any request by OVERFINCH or termination or expiration of this Agreement, Distributor shall return or destroy, according to OVERFINCH's instruction at such time, all confidential information and any demonstration products provided by OVERFINCH. Distributor shall ensure compliance with these confidentiality obligations by its employees, representatives and agents, including without limitation by obtaining appropriate confidentiality agreements from such persons.

4.3 **Other brands.** The Distributor shall not fit any other after-market tuning brands parts and / or accessories branded or unbranded to any Vehicle's supplied by OVERFINCH, so as to cause confusion in the market place that any other brands products are that of OVERFINCH or vice versa.

*JB AS·*

Final Version – 27/11/2018

8

**PAG-B0039**

## V. TERM AND TERMINATION

5.1 **Term.** Subject to termination, this Agreement shall have an initial term of one (1) year, commencing on the Effective Date, and shall renew automatically for additional one (1) year periods, subject to the below.

5.2 **Termination.** Either party may terminate this Agreement without cause upon thirty (30) days written notice to the other party to expire upon the end of the Initial Term or following that the anniversary of any renewal Term thereafter. Either party may also choose to render the agreement non-exclusive upon thirty (30) days written notice to expire upon the end of the Initial Term or following that the anniversary of any renewal Term thereafter (in addition to the right of OVERFINCH elsewhere in this Agreement to render the Agreement non-exclusive for failure by Distributor to meet its minimum orders).

Either party may terminate this Agreement immediately upon the other party's insolvency, bankruptcy, suspension of business, assignment of assets for the benefit of creditors, voluntary or involuntary dissolution, appointment of a trustee for all or a substantial portion of the party's assets, or breach of this Agreement. OVERFINCH reserves the right to immediately terminate this Agreement on written notice to Distributor if, in the sole discretion of OVERFINCH, the laws or economic circumstances in the Territory have changed in a material way so as to adversely impact OVERFINCH's relationship with Distributor or OVERFINCH's ability to conduct business in the Territory. Upon termination or expiration of this Agreement, OVERFINCH has the right of first refusal in respect of any Products and / or Vehicles and may, at its sole discretion, repurchase from Distributor, at the lesser of either the net prices paid by Distributor or the open market value, any of the Vehicles purchased and remaining unsold by Distributor. OVERFINCH's repurchase of Distributor's Vehicle inventory pursuant to the termination provisions hereof (or Distributor's right to sell such inventory if not so repurchased by OVERFINCH) shall constitute Distributor's sole remedy for termination or expiration of this Agreement. All intellectual property, confidentiality, non-compete and non-hire rights and obligations set forth in this Agreement shall survive termination or expiration.

5.3 **Transition.** During any notice period and after termination or expiration of this Agreement, Distributor shall cooperate with OVERFINCH to assure a smooth transition for Customers and OVERFINCH. Distributor shall introduce OVERFINCH personnel (and the personnel of any distributor or sales representative specified by OVERFINCH) to Customers who have ordered or expressed

*JB AS.*

Final Version – 27/11/2018                                                                                                           9

interest in Products and invite OVERFINCH (and any distributor or sales representative specified by OVERFINCH) to accompany Distributor's personnel on sales calls related to Products. Distributor shall take all necessary action to terminate any registration as an OVERFINCH distributor with any governmental authority. All indebtedness of Distributor to OVERFINCH shall become immediately due and payable without further notice or demand, which is hereby waived. Distributor shall also cooperate with OVERFINCH in identifying and producing copies of correspondence and business records related to all past, present and pending business activities conducted on behalf of Customers.

5.4   **Warranty.**   Distributor shall honor all warranties existing upon expiration or termination of this Agreement until any such warranties expire.

## VI.   GENERAL PROVISIONS

6.1   **Indemnification and Limitation of Liability.**   The Distributor shall fully indemnify, defend and hold harmless OVERFINCH and all related parties, to the extent that it is not as a direct result of a defective Product supplied by OVERFINCH, from and against any claims or losses arising directly or indirectly from, as a result of or in connection with its performance or breach under this Agreement (including without limitation the above obligation to inform OVERFINCH of any compliance or other relevant legal issues in the Territory), or any other act or omission of Distributor. In no event, whether as a result of breach of contract, indemnity, warranty, tort (including negligence), strict liability or otherwise, shall OVERFINCH liability for any loss or damage exceed the price of the specific Product that gave rise to the claim, nor include any special, consequential, incidental or punitive damages.

6.2   **Insurance.**   Distributor agrees to obtain and maintain commercially reasonable insurance, including without limitation comprehensive general liability coverage with combined policy limits of at least $1,000,000 per occurrence and covering bodily injury, personal injury, and property damage, including blanket contractual liability and naming OVERFINCH and its directors, officers, employees, and authorized representatives as additional insureds with respect to operations under this Agreement. Distributor agrees to furnish OVERFINCH with certificates showing the amount and existence of the required coverages and specifying that the policies shall not be canceled or materially changed except after (30) thirty days written notice to OVERFINCH. Distributor acknowledges that compliance with the specific insurance requirement above does not relieve Distributor of its obligation to maintain commercially reasonable insurance (either in regard to higher comprehensive general liability coverage limits or other

types of coverage, including without limitation employer liability, automobile liability and worker compensation coverage.).

6.3     **Governing Law and Dispute Resolution.**  The laws of the Commonwealth of Virginia excluding conflict of laws principles, shall govern this Agreement.  The parties reject any applicability of the United Nations Convention on Contracts for the International Sale of Goods.  Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the arbitration award may be entered in any court of competent jurisdiction.  Arbitration shall be held at a mutually acceptable location in Virginia, or another location agreed upon by the parties, and shall be conducted in English.  Either party may seek injunctive relief in a court of competent jurisdiction or other interim measures in the event of breach or threatened breach of this Agreement.  The prevailing party to any dispute shall be entitled to recover legal fees and other costs (including without limitation arbitration fees, disbursements, collection costs and the allocated cost of in-house counsel).

6.4     **Miscellaneous.**  Any notice pursuant to this Agreement shall be deemed given when sent by registered or certified mail (return receipt requested) or overnight delivery to an authorized officer at the headquarters of the other party at the address set forth in this Agreement.  Distributor may not assign or otherwise transfer this Agreement or any rights or obligations hereunder without the prior written consent of OVERFINCH.  The sale of the majority of Distributor's stock shall constitute an assignment for the purposes of this Agreement.  No failure or delay by either party in exercising any right or remedy, or insisting upon strict compliance by the other party with any obligation in this Agreement, shall constitute a waiver of any right thereafter to demand exact compliance with the terms of this Agreement.  The invalidity, in whole or part, of any provision in this Agreement shall not affect the remainder of such provision or any other provision and, where possible, shall be replaced by a valid provision that effects as close as possible the intent of the invalid provision.  Neither party shall be liable for failure to perform or delay in performance of any obligation under this Agreement (except payment of amounts already due and owing) where such failure or delay results from any event beyond its reasonable control.  The English language version of this Agreement shall govern and control any translations of the Agreement into any other language.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and any modification hereof must be in a writing signed by both parties.

JB AS·

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and each of the undersigned represents and warrants that he or she is duly authorized to execute this Agreement.

| PREMIER GROUP AUTOS LLC | OVERFINCH NORTH AMERICA INC. |
|---|---|
| 1500 Cordova Road, 206 Fort Lauderdale, Florida, 33316 | 500 Stinson Drive  Danville VA  24540 |
| By: _____ | By: _____ |
| Name: James Blackburn | Name: Alexander Sloane |
| Title: Owner | Title: Vice President |

Final Version – 27/11/2018

12

PAG-B0043