## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **NEXTGEAR CAPITAL, INC.** | |
|    *Plaintiff*, | |
| **v.** | **CASE NO. 1:20-cv-00354-TWP-DLP** |
| **PREMIER GROUP AUTOS, LLC,**<br>**JAMES M. BLACKBURN, and**<br>**EDWARD A. KESSLER,** | |
|    *Defendants*. | |

---

### NEXTGEAR CAPITAL, INC.'S RESPONSE IN OPPOSITION TO
### EDWARD A. KESSLER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

NextGear Capital, Inc. ("NextGear") respectfully submits its Response in Opposition to Edward A. Kessler's Motion for Partial Summary Judgment (ECF No. 118), and states:

### INTRODUCTION

The Court should deny Kessler's Motion for four reasons. First, the express terms of the Guaranty that Kessler admits he signed bar all of his claims against NextGear, including his claim for a violation of Florida law. Second, the express terms of both the Note and Guaranty that Kessler signed state that Florida law does not apply to this case. Third, even if Florida law applied, Florida's notary statute does not provide for a private right of action solely against a notary's employer. Finally, even if he could state a claim, Kessler can show no damages pertaining to the Power of Attorney ("POA") on which he bases his entire motion. As made clear in NextGear's Brief in Support of its Motion for Summary Judgment (ECF No. 116), this case concerns solely a Note and Guarantee that

Kessler admits he signed, and those contracts are the **_sole_** source of Kessler's liability to NextGear. The POA is simply irrelevant and is no defense to Kessler's liability under the Note and Guarantee.

On a more fundamental level, Kessler's theory that without the POA, the NextGear relationship would have automatically ceased and Kessler would have no liability to NextGear, is flat-out wrong. As stated, all of Kessler's liability to NextGear is based on the Note and Guaranty documents he admits he did sign. While NextGear does require its borrowers to execute a POA in favor of NextGear, the borrower in this case was not Edward Kessler, but rather his company, Premier Groups Autos, LLC ("Premier"), and in any event, NextGear undisputedly had a POA signed by Premier. Thus, no POA from Kessler was required in order to permit NextGear to lend money. This is proven by the fact that Premier floored a car with NextGear **_two days before_** any POA was signed by Premier. Beyond that, Kessler's claim that the POA was somehow used by Premier or NextGear to increase Premier's line of credit with NextGear is equally wrong. Kessler agreed in advance to any credit line increases in the Guaranty he signed. Again, the POA has nothing to do with any of the amounts owed to NextGear by Premier, and, in turn, owed by Kessler to NextGear pursuant to his Guaranty.

In short, and as discussed further below, Kessler's claims under Florida law fail as a matter of law, and the Court should deny Kessler's Motion.

### STATEMENT OF MATERIAL FACTS IN DISPUTE

For the Court's convenience, NextGear incorporates by reference the detailed factual background provided in its Brief in Support of its Motion for Summary Judgment (ECF No. 116). Fortunately, most of the facts in this matter are not in dispute. But NextGear

identifies the following facts as disputed (in the order Kessler presents them in his
Brief):

- Kessler alleges that despite his title as Director of Operations, he was really a
  "passive investor in [Premier] and never intended to have any day-to-day control
  or management of [Premier]." (Kessler Brief at 2.) He further alleges that he
  "informed Blackburn that Blackburn would be responsible for the operations...."
  (*Id.* at 3.) These allegations are contrary to the testimony of Premier's other
  member, James Blackburn. At his deposition, he stated his understanding that
  "Kessler was going to be the director of operations, as it states in that agreement,
  was going to move to Florida and become the director of ops of the company, full-
  time director of operations of the company, like that's a full-time role. That never
  happened...." (*See* Blackburn Depo. at 78:12-18, a copy of which is attached to
  Kessler's Desig. of Evid. as Ex. D.) In any event, if Kessler really intended for
  Blackburn to be responsible for the operations of Premier, that confirms
  Blackburn's authority to sign a POA on Premier's behalf.

- Kessler alleges that he "had the power of attorney document from NextGear
  reviewed by an attorney and was counseled to not sign such a document as part
  of any financing transaction with NextGear." (Kessler Brief at 4.) This allegation
  is contradicted by the only written communication from Kessler's lawyer that he
  produced in discovery. (*See* Ex. J to NextGear's Desig. of Evid.) In that March 26,
  2019 email, which Kessler received the evening before he signed the Note and
  Guaranty, Kessler's lawyer does not offer any advice as to whether Kessler should
  or should not sign a power of attorney. (*Id.*) Further, at his deposition, Kessler
  testified that he forwarded the NextGear documents to the lawyer and the lawyer

wrote back. (*See* Kessler Depo. at 140:10-145:4, true and correct excerpts of which are attached as Exhibit "1.") Kessler did not mention any phone conversation regarding the same subject. If there was a separate discussion with that lawyer, Kessler kept that to himself at his deposition. Thus, no evidence supports Kessler's allegation in his affidavit that he had ever been counseled not to sign a power of attorney.

- Kessler alleges that NextGear had "agreed that it would not require the execution of a Power of Attorney document as part of the transaction" with Premier. (Kessler Brief at 4.) Kessler claims that he was told this through Blackburn. Kessler's artful drafting here dodges the point that no one from NextGear ever told Kessler that he would not have to sign a Power of Attorney. Indeed, Kessler's entire theory about the power of attorney centers on what he was told by Blackburn—someone Kessler contends to be an outright fraudster—and not anything he was told by NextGear. To be clear, NextGear never agreed that Kessler would not have to sign a Power of Attorney. Rather, as discussed below, NextGear's procedures required a Power of Attorney signed by the borrower, which in this case was Premier, and NextGear did, in fact, receive a signed POA from Premier.

- Kessler cites to internal NextGear emails referencing certain "stipulations" regarding the contracting process with Premier, Blackburn, and Kessler. (Kessler Brief at 6.) At the time of contracting, however, Kessler had no idea about any of NextGear's internal policies and did not rely on any such policies when he signed the Note and Guaranty. As such, no NextGear policy affected, in any way, the parties' obligations under the Note and Guaranty, which are unambiguous.

4

- Kessler alleges that he "did not agree to sign the subject Power of Attorney document as part of the NextGear loan/financing...." and that he would not "have signed any of the Loan documents, including the personal guaranty, if it was required by NextGear to sign the Power of Attorney document as part of the Loan Documents or financing transaction." (*Id*. at 15.) NextGear agrees that Kessler ultimately did not sign a Power of Attorney, but Kessler did sign both the Note and Guaranty—as he admits—and the unambiguous terms of those documents control the relationship between Kessler and NextGear.

- Finally, Kessler alleges that NextGear did not provide any funding to Premier until after Blackburn and the person purporting to be Kessler executed their respective POAs. (Kessler Brief at 16.) That is directly contradicted by the NextGear Vehicle History Report for Stock Number 2 and Mannheim Bill of Sale, which each show that Premier first floored a car with NextGear upon purchasing that car from the Manheim Ft. Lauderdale Auto Auction on April 16, 2019—***two days before*** any POA was signed. (*See* Exs. K and S to NextGear's Desig. of Evid., respectively.) Thus, Kessler's argument that the POA was necessary in order for NextGear to lend money to Premier fails.

Setting aside these factual differences, Kessler and NextGear agree on two key points: (1) that Kessler signed the Note and Kessler Guaranty, and (2) that the terms of those documents are unambiguous. Those points are dispositive of this entire case.

## ARGUMENT & AUTHORITIES

### I.   KESSLER'S CLAIM IS BARRED BY THE UNAMBIGUOUS TERMS OF THE GUARANTY.

As stated, Kessler admits he signed the Note and his Guaranty. (*See* Kessler Brief at 5.) Kessler does not contend that any of the terms of those documents contain any ambiguous terms or provisions, so the Court should enforce them as they are written. *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013) ("It is well settled that when the terms of a contract are clear and unambiguous, they are conclusive, and courts will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions.")

As detailed in NextGear's Brief, the unambiguous terms of Kessler's Guaranty completely bar his claim under Florida's notary statute. First, Kessler agreed to give up a number of grounds to challenge his personal liability, including, as relevant here, any alleged tort committed by NextGear against Premier or Kessler:

> (b)   General Nature of Guaranty.   Guarantor acknowledges that this Guaranty is a guaranty of payment and not of collection, and that his or her obligations hereunder shall be absolute, unconditional, and unaffected by: (i) the waiver of the performance or observance by Borrower or any Guarantor of any agreement, covenant, term, or condition to be performed or observed by Borrower or any such Guarantor, as the case may be; (ii) the extension of time for the payment of any sums owing or payable with respect to any of the Liabilities or the time for performance of any other obligation arising out of or relating to any of the Liabilities; (iii) the modification, alteration, or amendment of any obligation arising out of or relating to any of the Liabilities; (iv) any failure, delay, or omission by Lender to enforce, assert, or exercise any right, power, or remedy in connection with any of the Liabilities; (v) the genuineness, validity, or enforceability of any of the Liabilities or any document related thereto; (vi) the existence, value, or condition of, or failure of Lender or any of its Affiliates to perfect its lien against, any security pledged in connection with the Liabilities; (vii) the release of any security pledged in connection with the Liabilities, or the release, modification, waiver, or failure to enforce any other guaranty, pledge, or security agreement; (viii) the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the property, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition, or readjustment or other similar application on proceeding affecting Borrower or any assets of Borrower; (ix) the release or discharge of Borrower or any other Guarantor from the performance or observance of any agreements, covenants, terms, or conditions in connection with any of the Liabilities, by operation of Law or otherwise; (x) the default of Borrower in any obligations to Guarantor or any torts committed by Borrower against Guarantor, even if Lender is alleged to be complicit or to have committed a direct tort against Guarantor; or (xi) any change in Borrower's ownership, entity type, legal structure, or state of organization or formation, or in Guarantor's relationship to Borrower or any other Guarantor.

(*See* Kessler Guaranty at ¶ 2(b), a true and correct copy of which is attached as Exhibit "C" to NextGear's Designation of Evidence in Support of its Motion for Summary Judgment (ECF No. 115-1).) Specifically, Kessler's obligations under the Guaranty are "absolute, unconditional, and unaffected by...(x) the default of Borrower in any

6

obligations to Guarantor or any torts committed by Borrower against Guarantor, even if Lender is alleged to be complicit or to have committed a direct tort against Guarantor…." (*Id.*) This language bars Kessler's claim here because he is alleging that NextGear, the Lender, acting on its own or in concert with Premier, the Borrower, committed a tort (notarial misconduct) against Kessler, the Guarantor.

As such, there is no genuine issue of material fact as to whether Kessler intended to be bound by the Guaranty nor that the Guaranty unambiguously bars the very kind of claim that Kessler is asserting here. The Court should deny Kessler's Motion and grant summary judgment to NextGear.

## II.   THE NOTE AND GUARANTY BAR THE APPLICATION OF FLORIDA LAW.

Kessler's Motion assumes that Florida law can apply to this case. That assumption, however, is directly contradicted by the express and unambiguous terms of the Note and Guaranty.

The Note makes clear that it is governed solely by Indiana law and that the unenforceability of any parts of the Note in one jurisdiction, such as Florida, applies *only* within that jurisdiction:

> 19.   SEVERABILITY.  Any provision of this Note or any other Loan Document that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Note and the other Loan Documents or affecting the validity or enforceability of any provision of this Note or any other Loan Document in any other jurisdiction.
>
> 20.   GOVERNING LAW.  Except with respect to the interpretation or enforcement of the arbitration and other provisions set forth in Section 22 (which shall be governed by the Federal Arbitration Act), the validity, enforceability, and interpretation of this Note and the other Loan Documents shall be governed by the internal Laws of the State of Indiana, without regard to conflicts of Laws provisions thereof.

(*See* Note at ¶¶ 19-20, a true and correct copy of which is attached as Exhibit "A" to NextGear's Desig. of Evid. at ¶¶ 19-20.) Thus, the Note cannot be rendered unenforceable in an Indiana federal court sitting in diversity and applying Indiana law.

Moreover, in such proceedings, NextGear cannot be held liable for any of the following types of damages:

> 24.  LIMITATION OF LIABILITY.   IN NO EVENT SHALL ANY LENDER PARTY BE LIABLE FOR ANY SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF PROFITS, LOSS OF BUSINESS OR OTHER ECONOMIC LOSS) ARISING OUT OF OR IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DOCUMENT (OR ANY ADVANCES MADE BY LENDER HEREUNDER OR THEREUNDER), EVEN IF SUCH LENDER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  FURTHER, IN NO EVENT SHALL THE LENDER PARTIES, COLLECTIVELY, BE LIABLE FOR ANY DAMAGES UNDER THIS NOTE OR ANY OTHER LOAN DOCUMENT (OR IN CONNECTION WITH ANY ADVANCE BY LENDER HEREUNDER OR THEREUNDER) THAT EXCEED, IN THE AGGREGATE, AN AMOUNT EQUAL TO THE SUM OF THE INTEREST AND FLOORPLAN FEES ACTUALLY PAID TO LENDER BY BORROWER UNDER THIS NOTE DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM AT ISSUE (OR, IN THE CASE OF MULTIPLE EVENTS, THE FIRST SUCH EVENT GIVING RISE TO THE CLAIM AT ISSUE).

(*Id.* at ¶ 24.) Thus, even if he could state a claim for a violation of Florida law, Kessler could not recover any of the damages he seeks because they are barred by the express and unambiguous terms of the Note.

Kessler's Guaranty contains similar choice-of-law, jurisdiction, and venue provisions, as well as a similar limitation-of-liability provision:

> (g)  Governing Law   Except with respect to the interpretation or enforcement of the arbitration and other provisions set forth in Section 5(i) (which shall be governed by the Federal Arbitration Act), the validity, enforceability, and interpretation of this Guaranty shall be governed by the internal Laws of the State of Indiana, without regard to conflicts of Laws provisions thereof.

> (h)  Jurisdiction and Venue   As evidenced by Guarantor's signature below, subject to the provisions in Section 5(i), Guarantor submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Guaranty, or to any matter arising out of or related to this Guaranty, which are initiated by Guarantor against Lender, to the extent, if any, that such claims or disputes are not subject to the provisions noted in Section 5(i), shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana.  Further, Guarantor expressly consents to the jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, as to any legal or equitable action that may be brought in such court by Lender, and waives any objection based upon lack of personal jurisdiction, improper venue or forum non conveniens with respect to any such action.  Guarantor acknowledges and agrees that Lender reserves the right to initiate and prosecute any action against Guarantor in any court of competent jurisdiction, and Guarantor consents to such forum as Lender may elect.

> (k)  LIMITATION OF LIABILITY   IN NO EVENT SHALL ANY LENDER PARTY BE LIABLE FOR ANY SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF PROFITS, LOSS OF BUSINESS OR OTHER ECONOMIC LOSS) ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY, EVEN IF SUCH LENDER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  FURTHER, IN NO EVENT SHALL THE LENDER PARTIES, COLLECTIVELY, BE LIABLE FOR ANY DAMAGES UNDER THIS GUARANTY OR ANY OTHER LOAN DOCUMENT THAT EXCEED, IN THE AGGREGATE, AN AMOUNT EQUAL TO THE SUM OF THE INTEREST AND FLOORPLAN FEES ACTUALLY PAID TO LENDER BY BORROWER UNDER THE NOTE DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM AT ISSUE (OR, IN THE CASE OF MULTIPLE EVENTS, THE FIRST SUCH EVENT GIVING RISE TO THE CLAIM AT ISSUE).

(*See* Ex. C at ¶ 5(g), (h), and (k).) The cumulative effect of these terms is to bar the application of Florida law, ensure that the Guaranty remains enforceable in Indiana,

8

and prohibit the recovery of the damages Kessler seeks. The Court should enforce the terms of the Note and Guaranty as they are written and deny Kessler's motion.

### III.    FLORIDA DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION SOLELY AGAINST A NOTARY'S EMPLOYER.

Even if Kessler could overcome the language of the Note and Guaranty—and he cannot—courts are not the proper place for determining notarial misconduct. Instead, it "falls within the jurisdiction of the Florida Governor's office to review alleged misconduct of a notary public and discipline, if necessary." *Filippova v. Mogilvesky*, No. 18-80044-CIV, 2018 WL 7825449, at *4 (S.D. Fla. Aug. 29, 2018). The website of the Florida Governor's Office reinforces this point, stating "Under the Florida Constitution and Florida Statutes, it falls within the jurisdiction of the Governor's Office to review complaints of misconduct against notaries and to take disciplinary action when deemed appropriate." (*See* https://www.flgov.com/notary-complaints (last visited Feb. 14, 2022), a true and correct screenshot of which is attached as Exhibit "2.") And as the Southern District of Florida also observed, the Florida notary statute does not provide for a private right of action for notarial misconduct, at least in terms of the civil penalties and criminal liability imposed by the statute. *Id.* at *4 n.3.

Importantly, no Florida courts have expressly found the existence of a private right of action in the notary statute, and, relevant here, none have permitted a plaintiff to sue just the notary's employer in the absence of also naming the notary as a defendant, which is what Kessler is attempting to do here. The closest analogous case, *Ameriseal of North East Florida, Inc. v. Leiffer*, 738 So.2d 993 (Fla. 5th DCA 1999), affirmed a trial court order finding no liability on the part of a notary and her employer, but the court there was never presented with the question of whether the statute permitted a private

right of action. *Id.* Moreover, private rights of action are not simply presumed in Florida. *Villazon v. Prudential Health Care Plan, Inc.*, 843 So.2d 842, 852 (Fla. 2003). Indeed, the Florida Supreme Court has clarified that legislative intent "should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994).

Here, Florida Statute § 117.05 does not expressly provide a private right of action, and one cannot be reasonably inferred from the statutory text. *See* FLA. STA. § 117.05. Section 117.05 defines a number of criminal penalties for a notary's official misconduct, such as in sections 117.05(1), (3)(d), (7), and (8), all of which are punishable only by the state of Florida. *Id.* Section 117.05(6), which is the one Kessler relies upon, states that "The employer of a notary public shall be liable to the persons involved for all damages proximately caused by the notary's official misconduct, if the notary public was acting within the scope of his or her employment at the time the notary engaged in the official misconduct." *Id.* While the statute describes what parties may be liable, it nowhere states that private parties can enforce the statute. Had the Florida Legislature wanted to permit private parties to be able to sue to enforce that provision, it could have easily done so. But it did not.

Instead, the rest of the notary statute, along with the statement by the Florida Governor's office, makes clear that the Governor's Office is in charge of reviewing complaints against notaries and taking disciplinary action. That action could obviously include the State of Florida holding a notary's employer liable for damages, but it does not follow that Kessler, a citizen of Pennsylvania, can sue NextGear, a citizen of Indiana, in an Indiana federal court for a violation of a Florida notary statute without also

asserting a claim against the notary. The statutory text does not support such a far-flung application of the law. The Court should deny Kessler's Motion.

## IV.   KESSLER'S CLAIM FAILS BECAUSE THE POA DID NOT CAUSE ANY DAMAGES.

Finally, even if Kessler could overcome the language of the Note and Guaranty and could properly state a claim against NextGear under Florida law—and, again, he cannot—his claim still fails because none of Kessler's alleged damages were proximately caused by the POA. To be clear, NextGear agrees that Kessler did not sign the POA in issue, and after discovery, NextGear is not making any claim that he did. Both Kessler and NextGear agree, however, that he did sign the Note and Guaranty, and the terms of those documents are what make him liable to NextGear here.

### a.   The Note and Guaranty Are the Sole Source of Kessler's Liability.

Under the Note, Premier is the "Borrower" and NextGear is the "Lender." The Note sets the principal amount of the Note as $150,000 or "such greater or lesser sum which may be advanced to or on behalf of Borrower from time to time...."

> FOR VALUE RECEIVED, the undersigned borrower ("Borrower") promises to pay to the order of NextGear Capital, Inc. ("Lender"), with its principal office at 11799 North College Avenue, Carmel, Indiana 46032, or such other place as Lender may designate in writing or on the Discover Portal from time to time, in lawful money of the United States of America, the principal sum of One Hundred Fifty Thousand Dollars and Zero Cents ($150,000.00), or such greater or lesser sum which may be advanced to or on behalf of Borrower from time to time, together with all costs, interest, fees, and expenses as provided for under this Note and the other Loan Documents. Unless otherwise stated in an addendum to this Note, this Note shall become effective on the date of Borrower's execution hereof as set forth below Borrower's signature (such date, or the effective date otherwise stated in the applicable addendum, the "Effective Date").

(Ex. A at p. 1). The Note obligates Premier to pay back amounts advanced for floorplanned inventory:

> (f)   Borrower shall pay all Liabilities, without notice, that concern or relate to a Floorplan Advance for any Unit of Lender Financed Inventory on or before the Maturity Date. Lender shall apply such payments to any and all Liabilities relating to such Floorplan Advance. Notwithstanding anything herein to the contrary, if a shortage exists between the payments received by Lender with respect to a Floorplan Advance, and the Liabilities relating to such Floorplan Advance, then such shortage shall be immediately due and payable and shall continue to be considered a Liability owed by Borrower to Lender, secured by the Collateral.

(*Id*. at ¶ 5(f).) The failure to do so constitutes an event of default:

11

> 6. EVENTS OF DEFAULT. The occurrence of any of the following events shall be considered an event of default under this Note and the other Loan Documents (each, an "Event of Default"):
>
>    (a) Borrower or any Guarantor fails to perform any of its obligations, undertakings or covenants under this Note or under any other Loan Document, including any obligation to repay any Liability when due and Borrower's obligation to pay upon demand any outstanding Liabilities under this Note or any of the other Loan Documents.

(*Id.* at ¶ 6(a.)) A Guarantor's failure to make a required payment also constitutes an event of default:

> (e) Borrower or any Guarantor, or any of their respective Parent Companies, has defaulted in the payment or performance of any debt or obligation under any other agreement, whether to Lender or to a third party.

(*Id.* at ¶ 6(e).) And where, as here, NextGear has to sue to enforce its rights under the Note, Premier must pay NextGear's attorney's fees and costs:

> 18. LEGAL FEES AND COLLECTION COSTS. Borrower shall pay to Lender all reasonable legal fees, expenses, and collection costs incurred by any Lender Parties, including Lender as a result of any Event of Default, or any failure by Borrower or any Guarantor to perform any obligation or satisfy any Liability of Borrower, including any prosecution by Borrower or any Guarantor or any of their respective Representatives of affirmative claims or counterclaims against Lender Parties.

(*Id.* at ¶ 18.)

Kessler's Guaranty, in turn, obligates him to personally satisfy all of Premier's obligations under the Note:

> 2. GUARANTY AND OTHER AGREEMENTS.
>
>    (a) Guaranty Obligations. Guarantor hereby voluntarily, unconditionally, and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Liabilities, and (ii) the full and prompt performance of all the terms, covenants, conditions, and agreements related to the Liabilities. Guarantor further agrees to pay all expenses, including attorneys' fees and court costs (including, in each case, those relating to bankruptcy and appeals), paid or incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities, and in enforcing this Guaranty or in defending any claims by Borrower or any Guarantor related to any of the Liabilities, plus interest on such amounts at the lesser of (A) thirteen percent (13%) per annum, compounded daily, or (B) the maximum rate permitted by Law. Interest on such amounts paid or incurred by Lender shall be computed from the date of payment made by Lender and shall be payable on demand.

(Ex. C at ¶ 2(a).) Kessler also waived all forms of notice pertaining to his guaranty, including "notice of any change in Borrower's credit terms or limits with Lender, including any temporary or permanent increases in Borrower's Credit Line (and Guarantor prospectively consents to any such change)....":

(d) <u>Waivers by Guarantor.</u>   Guarantor hereby expressly waives: (i) notice of the acceptance by Lender of this Guaranty; (ii) notice of the existence, creation, or non-payment of all or any of the Liabilities; (iii) presentment, demand, notice of dishonor, protest, and all other notices whatsoever; (iv) diligence in collection or protection of, or realization upon any of the Liabilities, any obligation under this Guaranty, or any security for or guaranty of any of the foregoing; (v) impairment of any collateral securing the Liabilities; (vi) notice of any change in Borrower's credit terms or limits with Lender, including any temporary or permnant increases in Borrower's Credit Line (and Guarantor prospectively consents to any such change); (vii) any non-contractual duties of Lender to Borrower or any Guarantor; and (viii) the protections of any Laws intended to protect consumers or regulate consumer loans, as the Liabilities are commercial in nature.

(*Id.* at ¶ 2(d).)

The cumulative effect of the terms of the Note and Guaranty mean that (1) Premier's credit line could go up or down and Premier would still be obligated to pay NextGear back, (2) if NextGear has to sue to collect, Premier has to pay NextGear's attorney's fees and costs, (3) Kessler is unconditionally and absolutely liable for all amounts owed by Premier to NextGear, and (4) Kessler consented in advance to any changes in Premier's credit line and is not entitled to receive any notice about such changes. Thus, all of Kessler's liability in this case comes from solely the Note and Kessler Guaranty—not the POA.

### b. The POA Created No Liability for Kessler.

The powers in the POA concern the acquisition, handling, and disposal of the borrower's collateral, as well as the protection of NextGear's interests in the collateral:

2.   With or without the occurrence of an Event of Default under the Note, Borrower irrevocably appoints Lender (and all Representatives designated by Lender), with full power of substitution, as Borrower's true and lawful attorney-in-fact with full power and authority in the place and stead of Borrower and in the name of Borrower or in its own name, from time to time in Lender's discretion, to take any and all appropriate actions and to execute and deliver any and all documents and instruments which may be necessary or desirable to accomplish the purposes of the Note and each of the other Loan Documents.  Without limiting the generality of the foregoing, Borrower hereby grants to Lender the power and right, on behalf of Borrower, without further notice to or assent by Borrower, at any time, to do the following:

    (a)   execute such security agreements, invoices, notes, and related documentation as may be necessary for Borrower to acquire, refinance, or sell any Collateral (including any Units secured or to be secured by Advances made thereon);

    (b)   execute all documents necessary for Lender to perfect or secure its interest in the Collateral;

    (c)   make, settle, and adjust claims under policies of insurance, and endorse any check, draft, instrument, or other item of payment for the proceeds of such policies of insurance, and make all determinations and decisions with respect to such policies of insurance;

    (d)   endorse the name of Borrower upon any document, instrument, certificate, evidence of title, state registration documents, trust receipt, checks or other items of payment, or any related or similar documents, in each case as necessary to pay for or protect the Collateral, including, without limitation, any agreements between Borrower and any global positioning satellite company;

    (e)   endorse the name of Borrower upon any items of payment or proceeds of any Collateral (including any Units constituting Collateral), and to deposit the same to the account of Lender on account of Borrower's Liabilities under the Note and the other Loan Documents;

    (f)   endorse the name of Borrower upon any chattel paper, document, instrument, invoice, freight bill, bill of lading, or similar document or agreement relating to any Collateral;

    (g)   use the information recorded on or contained in any data processing equipment, computer hardware, or software relating to any Collateral to which Borrower has access;

    (h)   pay or discharge any taxes, liens, security interests, or other encumbrances levied or placed on or threatened against Borrower or any of the Collateral;

    (i)   communicate with any party to any contract with regard to the assignment of the right, title, and interest of Borrower in and under such contract and/or the Collateral, and other matters relating thereto;

    (j)   contact any third parties and disclose and/or receive any Borrower information, including, without limitation, information or data in Borrower's application for credit with Lender, the Note, or Borrower's Credit Line, in each case for the purpose of, among other things, preserving Lender's security interest in the Collateral and ensuring the satisfaction of Borrower's Liabilities under the Note and the other Loan Documents; and

    (k)   do all other things reasonably necessary to satisfy Borrower's Liabilities under the Note and the other Loan Documents.

3.   Upon the occurrence of an Event of Default under the Note, Borrower irrevocably appoints Lender (and all Representatives designated by Lender), with full power of substitution, as Borrower's true and lawful attorney-in-fact with full power and authority in the place and stead of Borrower and in the name of Borrower or in its own name, from time to time in Lender's discretion, to do the following:

    (a)   demand, collect, accept receipt for, settle, compromise, adjust, foreclose, or realize upon any of the Collateral, in each case in such manner as Lender may determine;

    (b)   file or prosecute any claim, litigation, suit, petition, writ, or proceeding in any court of competent jurisdiction or before any arbitrator or other neutral, or take any other action otherwise deemed appropriate by Lender for the purpose of collecting any and all such moneys due to

    Borrower, whenever payable, and to enforce any other right in respect of the Collateral, including, without limitation, confessing to or consenting to judgments, writs of replevin or possession, and/or any equitable relief in favor of Lender or its Affiliates;

    (c)   file or prosecute all proofs of claim against any account debtor on behalf of Borrower; and

    (d)   notify the United States Postal Service of a change in address for the delivery of Borrower's mail to an address designated by Lender, and to receive Borrower's mail on behalf of Borrower.

(*See* Ex. 8 to the Mayoral Depo. at ¶¶ 2, 3, a copy of which is attached to Kessler's Desig.

of Evid. at Ex. C.) No powers granted to NextGear in the POA could have caused Kessler

to suffer any damages. Because the Note and Kessler Guaranty are the only sources of his liability to NextGear, the Court should deny his Motion.

### c. A POA From Kessler Was Not Required to Lend Money to Premier.

Aside from not acknowledging the effect of the Note and Guaranty, Kessler also offers no explanation of how any of the terms of the POA were used by NextGear—or any other party, for that matter—to cause Kessler any damages. Kessler's primary argument is that "Mayoral's notary misconduct allowed NextGear to obtain a document *__absolutely critical and necessary__* to the overall funding of the [Premier] line of credit." (*Id*. at 22) (emphasis added.) Kessler further claims that his POA was required by NextGear and if it wasn't received, the NextGear account would be locked and Premier could not have accessed any funds from NextGear. (*Id*. at 7.) In other words, as Kessler claims, his POA was the key to the NextGear relationship.

No competent summary judgment evidence, however, supports that argument, and the reason is simple: NextGear did not need a POA signed by Kessler. As stated in NextGear's Brief, Blackburn signed a POA on behalf of Premier—which no party disputes—so NextGear already had a POA signed by the borrower (Premier) in hand. (*See* NextGear's Brief at 20.) Nothing in any document governing Premier required the unanimous authority of both members—Kessler and Blackburn—in order to grant a third-party power of attorney for Premier. In the absence of such limitation, either member had both apparent and actual authority to bind Premier to a POA without the consent or acknowledgement of the other. *See* FLA. STAT. § 605.0407 (establishing that every LLC is member-managed unless the operating agreement expressly says otherwise); FLA. STAT. § 605.04074 (providing that every member of a member-

managed LLC is an agent of the LLC "and an act of a member, including signing an agreement or instrument of transfer in the name of the company for apparently carrying on in the ordinary course of the company's activities and affairs or activities and affairs of the kind carried on by the company, binds the company unless the member had no authority to act for the company in the particular matter and the person with whom the member was dealing knew or had notice that the member lacked authority.") In any event, no POA from Kessler was needed for the lending relationship to proceed. Indeed, as discussed in NextGear's Brief, Premier floored a car with NextGear two days before Blackburn signed the Premier POA. (*Id.* at 19; *see also id.* at Exs. K, S.) Thus, Kessler's claims about the importance of his POA to the NextGear relationship are unfounded.

In short, Kessler has failed to meet his burden show how his alleged damages are proximately caused by the POA in issue. The Court should deny Kessler's Motion.

**CONCLUSION**

For the foregoing reasons, the Court should deny Kessler's Motion for Summary Judgment.

Dated: March 14, 2022                    Respectfully submitted,


                                         /s/ Brian S. Jones
                                         DAVID J. JURKIEWICZ
                                         Attorney No. 18018-53
                                         BRIAN S. JONES
                                         Attorney No. 29578-49
                                         **BOSE MCKINNEY & EVANS LLP**
                                         111 Monument Circle, Suite 2700
                                         Indianapolis, IN 46204
                                         Telephone: (317) 684-5000
                                         Facsimile: (317) 684-5173
                                         djurkiewicz@boselaw.com
                                         b.jones@boselaw.com

                                         **ATTORNEYS FOR NEXTGEAR CAPITAL,
                                         INC.**

**CERTIFICATE OF SERVICE**

I certify that on March 14, 2022, a true and correct copy of the above and foregoing was served on all counsel of record through CM/ECF.

/s/ Brian S. Jones
BRIAN S. JONES

4314211