**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **NEXTGEAR CAPITAL, INC.** *Plaintiff*, v. **PREMIER GROUP AUTOS, LLC, JAMES M. BLACKBURN, and EDWARD A. KESSLER,** *Defendants.* | **CASE NO. 1:20-cv-00354-TWP-DLP** |

**NEXTGEAR CAPITAL, INC.'S CONSOLIDATED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NextGear Capital, Inc. ("NextGear") respectfully submits its Consolidated Reply in Support of its Motion for Summary Judgment (ECF No. 115), and states:

**INTRODUCTION**

The Defendants have raised no genuine issues of material fact that would necessitate a trial on the issue of their liability to NextGear. The terms of the Note and the Defendants' personal guaranties are clear and unambiguous, and nothing in the Defendants' Responses overcomes or justifies disregarding the effect of those clear and unambiguous terms. NextGear's Motion for Summary Judgment, Brief in Support, and Response to Kessler's Motion for Partial Summary Judgment (ECF Nos. 115, 116, and 126, respectively) set forth in clear detail, backed by competent summary judgment evidence, why NextGear is entitled to complete summary judgment. As such, NextGear will not restate those facts and arguments here. Instead, to save the Court's time and

1

resources, NextGear addresses only the necessary points from the Defendants' Responses below.

## ARGUMENT & AUTHORITIES

**I.   BLACKBURN AND PREMIER FAIL TO PROVE THEIR AFFIRMATIVE DEFENSE OF IMPOSSIBILITY.**

At the outset, Blackburn and Premier both admit that they are not disputing the validity or the terms of the Note and Blackburn Guaranty. As stated in NextGear's Motion and Brief, the terms of the Note and Blackburn Guaranty address all of the situations present in this simple contract case. Thus, the Defendants' admission, alone, warrants summary judgment in favor of NextGear.

But rather than acknowledging the effect of their admission, Blackburn and Premier instead argue that their breaches of the Note and Blackburn Guaranty are excused because of "impossibility of performance," an affirmative defense upon which they bear the burden of proof—and which they completely fail to meet. *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 744 (7th Cir. 2021) (noting that a defendant must prove an affirmative defense by showing there is no genuine issue of material fact as to each element of their claim).

Their impossibility defense, however, is nothing more than an attempted re-do of their prior counterclaims for tortious interference, which this Court dismissed nearly a year ago. (*See* ECF No. 63.) While they rely on the same general allegations, Blackburn and Premier now claim that they are excused from paying anything to NextGear because the purported "subject matter" of the Note and Blackburn Guaranty was, in actuality, the contract that Premier had with Overfinch—even though no such agreement is ever stated or mentioned anywhere in the Note or Blackburn Guaranty, and even though

Overfinch Land Rovers/Range Rovers were not the only kind of vehicles Premier bought and sold. In fact, the very first vehicle Premier floored with NextGear was not an Overfinch vehicle; it was a 2010 Mercedes passenger van. (*See* NextGear's Desig. of Evid. at Ex. K.) Nonetheless, as Blackburn and Premier tell it, the loss of the Overfinch contract—which, again, they claim was "subject matter" of the NextGear Note and Blackburn Guaranty—rendered their performance under the Note impossible and therefore they are excused from making all payments under the Note. As discussed below, their defense fails as a matter of law, and NextGear is entitled to summary judgment.

### A. Blackburn and Premier Have No Competent Evidence Supporting Their Impossibility Defense.

The factual basis for Blackburn's and Premier's impossibility defense is threadbare and difficult to follow, but, in general, Blackburn and Premier claim that a NextGear representative said something to a third party, James Archbell, who was supposed to come in and provide financing for Premier after Premier defaulted on its deal with NextGear. Archbell's money was purportedly going to save Premier's business, allow it to purchase enough inventory to meet the requirements of the Overfinch contract, and pay off Premier's debt to NextGear. That last bit is important because by the time Premier started talking with Archbell (apparently sometime in late September 2019), Premier had already incurred all of the debt to NextGear that is the subject matter of this case. Thus, all of the damages that NextGear seeks from Blackburn and Premier, and which they, in turn, seek to avoid through their impossibility defense, were incurred *prior* to the events mentioned in the Defendants' impossibility defense.

3

Nonetheless, because of something that someone purportedly associated with NextGear purportedly said to Archbell, he decided to pull out. Was that the only communication in issue? It's not clear. Was Archbell told anything that wasn't true? That's also not clear. Blackburn and Premier also appear to assert that either that same NextGear employee or perhaps another one communicated something to Overfinch at some point in time and that is what caused Overfinch to terminate its contract. Or maybe it was Archbell that said something to Overfinch? Again, it's not clear. Similarly, was it the loss of the Archbell financing that caused Premier to fail? Or was it the loss of the Overfinch contract, even though Premier was not exclusively selling Overfinch vehicles? Exactly which contract, Archbell or Overfinch, was the purported "subject matter" of the NextGear Note and Blackburn Guaranty? Blackburn and Premier do not provide any answers. Nor do they answer the other obvious questions their allegations raise, such as:

- Who at NextGear spoke to Mr. Archbell?
- What did he or she say?
- When did he or she say it?
- Who at NextGear spoke to Overfinch?
- What did he or she say?
- When did he or she say it?
- Was NextGear legally prohibited from speaking to anyone about the status of Premier's financing with NextGear?
- Did NextGear say anything that was untruthful?
- If the Overfinch contract was the true "subject matter" of the NextGear Note and Blackburn Guaranty, why is it never mentioned in either of those documents?

- How would the Archbell financing have allowed Premier to both pay off NextGear and buy enough vehicles to satisfy Overfinch's sales quotas in just a couple of months?

Against this slew of unanswered questions, Blackburn and Premier offer no answers, much less answers backed by competent summary judgment evidence, and certainly not enough to meet their burden of proof to prevail on their affirmative defense. The point is that by offering flimsy, vague, and unsubstantiated allegations, Blackburn and Premier have failed to meet the burden required to defeat summary judgment for NextGear. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (noting that "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by **specific factual allegations**, that there is a genuine issue of material fact that requires trial.") (emphasis added). Further, "[t]he opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

Moreover, the sole source of all of Blackburn's and Premier's "evidence" of any purported communication with Archbell or Overfinch is Blackburn himself, stating what someone else told him about what NextGear did or said. That is classic hearsay—even double hearsay—and inadmissible as summary judgment evidence. *See* FED. R. EVID. 801(c) (defining hearsay as an out-of-court statement made by a declarant offered in evidence to prove the truth of the matter asserted). No exception to the hearsay rule applies here. As such, none of what Blackburn says about what Archbell or Overfinch told him that NextGear supposedly said can be considered here. Summary judgment for NextGear is warranted.

5

### B. Blackburn and Premier Fail to Show That Their Performance of the NextGear Note and Blackburn Guaranty Was "Absolutely Impossible."

Aside from lacking the necessary factual detail, Blackburn's and Premier's claim for "impossibility of performance" is also legally meritless. As a threshold matter, NextGear, Blackburn, and Premier all agree that the NextGear Note and Blackburn Guaranty are unambiguous. As such, courts cannot look outside the express terms of the documents to interpret their terms. *First Savings & Loan Ass'n of Central Indiana v. Treaster*, 490 N.E.2d 1149, 1152 (Ind. Ct. App. 1986). Neither the Note nor the Blackburn Guaranty mention, in any way, the Overfinch contract. Blackburn and Premier, however, are now asking the Court to reinterpret those documents as having a subject matter completely outside their terms, and they are basing that solely on their own self-serving parol evidence. The Court, however, cannot consider such parol evidence to reinterpret documents that are undisputedly unambiguous. That should end the matter right there.

Nonetheless, even if the Note and Blackburn Guaranty were ambiguous—and, again, they are not—Blackburn and Premier still misapply the law concerning impossibility of performance. In Indiana, "[t]o invoke impossibility, one must demonstrate that performance is 'not merely difficult or relatively impossible, but ***absolutely impossible***, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract.'" *Wagler v. W. Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 378 (Ind. Ct. App. 2012) (quoting *Ross Clinic, Inc. v. Tabion*, 419 N.E.2d 219, 223 (Ind. Ct. App. 1981) (internal quotations omitted and emphasis added)). Thus, Blackburn and Premier must show two things: (1) that their performance of the NextGear Note and Blackburn Guaranty was "absolutely impossible," and (2) that the Overfinch contract

was the "subject matter" of the NextGear Note and Blackburn Guaranty. We'll start with the last point first.

As stated above, Blackburn and Premier have no evidence—outside their own say-so, of course—showing that the Overfinch contract was the "subject matter" of the NextGear Note and Blackburn Guaranty. The Overfinch contract is nowhere mentioned in the Note or Blackburn Guaranty, and even if they could overcome the clear bar of parol evidence rule, the Defendants have offered no competent summary judgment evidence showing that the parties intended the Overfinch contract to be the subject matter of the Note and Blackburn Guaranty. Moreover, despite Blackburn's and Premier's assertion that that without the Overfinch agreement, "the primary business purpose of Defendants could not be met," (Response at 4), the undisputed facts show that Premier bought and sold vehicles other than Overfinch vehicles. Indeed, a 2002 Hummer H1—not an Overfinch vehicle—is one of the vehicles forming the basis of this suit, and, in total, four of the eleven vehicles (36%) that Premier floored with NextGear were not Overfinch Land Rover/Range Rover vehicles. (*See* NextGear's Desig. of Evid. at Ex. M ¶¶ 8, 10.) Thus, while the Overfinch contract may have been a significant component of Premier's business, it was not the only component, and certainly not such a fundamental or integral part of its business that it constituted the unwritten, implied "subject matter" of the Note and Blackburn Guaranty.

That also shows why the loss of the Overfinch agreement did not render Premier's performance "absolutely impossible." As shown, nearly 40% of Premier's business with NextGear did not concern Overfinch vehicles. While Premier's business might have become difficult or perhaps even relatively impossible without the Overfinch contract,

the fact that it bought and sold other vehicles conclusively demonstrates that the performance owed to NextGear was not "absolutely impossible."

As such, Blackburn and Premier fail meet their burden to prove their entitlement to judgment as a matter of law. The Court should grant summary judgment to NextGear.

## II. KESSLER RAISES NO GENUINE ISSUES OF MATERIAL FACT DEFEATING HIS LIABILITY TO NEXTGEAR.

Like Blackburn's and Premier's Response, Kessler's Response lacks factual and legal merit. The bulk of Kessler's Response merely restates the arguments from his Motion for Partial Summary Judgment. NextGear responded to that Motion on March 14, 2022, (*see* ECF No. 126), and Kessler did not timely reply within 14 days as required under Local Rule 56-1(c). Accordingly, NextGear will not rehash the arguments it has already stated in its own Motion and its Response to Kessler's Motion. Instead, NextGear will address only those points in Kessler's Response that merit further discussion.

### A. A POA From Kessler Was Not Necessary to the Validity of the Note and Kessler Guaranty.

As expected, Kessler continues to assert that he was required to execute a Power of Attorney ("POA"), and that he did not renders all of the NextGear documents that Kessler admits he signed null and void. He relies on NextGear internal policies that he claims specify that NextGear must have had a signed POA from him to continue with the lending relationship. As NextGear has pointed out, however, that is not true. While NextGear requires its *borrowers* to execute POAs and will lock accounts where a POA is not signed, here **Premier** was the borrower, **not Kessler**. (*See* NextGear's Brief in Supp. of its Mot. for Summary Judgment at 20.) Since there is no question that Blackburn signed a POA on behalf of Premier and that Blackburn had the authority to do so, Kessler's argument about the necessity of his own POA fails.

8

Beyond that, Kessler's focus on NextGear's internal "stipulations"—which he was unaware of until discovery in this case—is inappropriate and misplaced. As an initial matter, NextGear's internal policies and procedures are not part of the Note or Kessler Guaranty. Since no party in this case contends that the Note or Kessler Guaranty are ambiguous, the Court cannot look to parol evidence to vary or adjust the unambiguous terms of the Note and Kessler Guaranty. *Treaster*, 490 N.E.2d at 1152. Those documents plainly state that a POA is required from the *borrower*, which was Premier. And since NextGear had a POA from Premier, that renders all of Kessler's arguments about the necessity of his own POA irrelevant and no evidence at all.

Beyond that, the express terms of the Note and Kessler Guaranty also state that NextGear can excuse, at its choice, any failure of the Borrower or Guarantor. Specifically, the Note states:

> 16. NO WAIVER. No failure or delay by Lender in exercising any right, power, or privilege or the granting of an exception by Lender with respect to any of the Terms or Conditions will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege by Lender.

(*See* NextGear's Desig. of Evid. at Ex. A, ¶ 16.) Kessler's Guaranty says the same thing:

> (e) No Waiver. No failure or delay by Lender in exercising any right, power, or privilege or the granting of an exception by Lender with respect to any term or condition of this Guaranty will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege by Lender.

(*Id.* at Ex. C, ¶ 5(e).) Thus, even if NextGear's internal policies required a POA from Kessler—and, again, they didn't—that is something that NextGear plainly had the power to waive if it wanted without any recourse from Kessler. No consideration of parol evidence is necessary to that determination. Thus, Kessler's entire argument hinges upon his argument that the POA was an absolute when the facts show that it was not.

The Court should apply the unambiguous terms of the Note and Kessler Guaranty and grant summary judgment to NextGear.

### B. Kessler Misstates Florida Law.

Kessler's Response wholly fails to rebut NextGear's argument that, even if Florida law could apply—and, again, it does not—the Florida statute in issue, FLA. STAT. § 117.05(6), does not provide a private right of action. Had the Florida Legislature intended for that statute to allow private parties to pursue claims of notarial misconduct, it could have easily done so in the statute. But the statute makes no mention of a private right of action, no Florida court has expressly found that one exists, and one cannot be simply presumed. *Villazon v. Prudential Health Care Plan, Inc.*, 843 So.2d 842, 852 (Fla. 2003). Kessler, however, boldly claims that *Filippova v. Mogilvesky*, NO. 18-80044-CIV-MARRA/MATTHEWMAN, 2019 WL 1369379 (S.D. Fla. Jan. 15, 2019), "expressly declared that Florida courts allow a private right of action against a notary's employer—even if the notary is not named as a defendant." (Response at 28.) That case, however, contains no such statement regarding a private right of action. Indeed, the phrase "private right of action" is never even used in the opinion, and that court nowhere analyzes the content of the relevant Florida statute. How Kessler could make such a fundamentally misleading statement about *Filippova*'s content and holding is unclear. Additionally, Kessler also fails to state that the notary at issue in *Filippova* had been named as a defendant but was subsequently voluntarily dismissed. Thus, rather than showing that Kessler's claim is proper, *Filippova* confirms what NextGear has said all along: that Kessler's claim lacks support in Florida law. Summary judgment for NextGear is warranted.

10

### C.     Kessler's Deception and Indemnification Claims Still Fail.

Regarding his claim for deception, Kessler has still presented no competent evidence showing any criminal intent on the part of NextGear. See *Conner v. Howe*, 344 F. Supp.2d 1164, 1174-75 (S.D. Ind. 2004) (stating that proof of criminal intent is required for claims arising under Indiana's Crime Victims Act). Kessler even argues that NextGear's Amendments to its Interrogatory Responses are evidence of NextGear's "criminal intent." (Response at 33.) Kessler has previously complained about NextGear's Amendments to its Interrogatory Responses, and he even attempted to depose a NextGear representative about its reasons for amending its discovery responses and sought sanctions against NextGear—all for doing precisely what the discovery rules required it to do. Judge Pryor, however, saw right through that; she held that NextGear's supplementation of its discovery responses was "substantially justified," denied Kessler's request for a deposition, and rejected his request for sanctions. (*See* ECF No. 111 at 1-2.) Thus, nothing about NextGear's "substantially justified" amendments to its discovery responses qualifies as competent summary judgment evidence of criminal intent or even raises a genuine issue of material fact. Kessler's deception claim fails as a matter of law, and summary judgment for NextGear is appropriate.

Similarly, in defense of his indemnification claim, Kessler does not even address NextGear's argument that his claim for common-law indemnification is meritless and, at a minimum, not ripe. (*See* NextGear's Brief in Supp. of its Motion for Summary Judgment at 26-28.) First, Kessler fails to identify how constructive liability is in issue. *Rotec. v. Murray Equip., Inc.*, 626 N.E.2d 533, 535 (Ind. Ct. App. 1993), *reh'g denied*) ("In the absence of any express contractual or statutory obligation to indemnify, such action will lie only where a party seeking indemnity is without actual fault but has been

11

compelled to pay damages due to the wrongful conduct of another for which he is ***constructively liable***.") (emphasis added). Here, Kessler is directly liable for his breaches of his Guaranty, not constructively liable. Second, Kessler does not defend his claim's untimeliness. Even if he could overcome the lack of constructive liability—and he cannot—Indiana courts will not entertain common-law indemnification claims until after the indemnitee has suffered a judgment or paid a claim. *See TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co.*, 542 N.E.2d 1373, 1376 (Ind. Ct. App. 1989) (stating that a party seeking indemnity suffers loss "at the time of payment of the underlying claim, payment of a judgment on the underlying claim, or payment in settlement of the underlying claim"), *reh'g denied, trans. dismissed*. Because none of that has happened yet, summary judgment for NextGear is warranted.

## CONCLUSION

For the foregoing reasons, as well as those stated in NextGear's Motion for Summary Judgment, its Brief in Support, and its Response to Kessler's Motion for Partial Summary Judgment, the Court should grant NextGear's Motion for Summary Judgment.

Dated: April 11, 2022 Respectfully submitted,

/s/ Brian S. Jones
DAVID J. JURKIEWICZ
Attorney No. 18018-53
BRIAN S. JONES
Attorney No. 29578-49
**BOSE MCKINNEY & EVANS LLP**
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 684-5000
Facsimile: (317) 684-5173
djurkiewicz@boselaw.com
b.jones@boselaw.com

**ATTORNEYS FOR NEXTGEAR CAPITAL, INC.**

## CERTIFICATE OF SERVICE

I certify that on April 11, 2022, a true and correct copy of the above and foregoing was served on all counsel of record through CM/ECF.

/s/ Brian S. Jones
BRIAN S. JONES

4342076