**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., )<br>)<br>　　　　　　　Plaintiff, )<br>)<br>　　v. )<br>)<br>PREMIER GROUP AUTOS, LLC, )<br>JAMES M BLACKBURN, )<br>EDWARD A KESSLER, )<br>)<br>　　　　　　　Defendants. )<br>)<br>JAMES M BLACKBURN, )<br>PREMIER GROUP AUTOS, LLC, )<br>EDWARD A KESSLER, )<br>)<br>　　　　　　Counter Claimants, )<br>)<br>　　v. )<br>)<br>NEXTGEAR CAPITAL, INC., )<br>NEXTGEAR CAPITAL, INC., )<br>)<br>　　　　　Counter Defendants. ) | Case No. 1:20-cv-00354-TWP-DLP |

**ORDER ON PLAINTIFF NEXTGEAR CAPITAL, INC.'S MOTION**
**FOR SUMMARY JUDGMENT AND DEFENDANT JAMES KESSLER'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment (Filing No. 115) filed by Plaintiff NextGear Capital, Inc. ("NextGear") and a Motion for Partial Summary Judgment (Filing No. 118) filed by Defendant Edward A. Kessler ("Kessler"), both pursuant to Federal Rule of Civil Procedure 56. NextGear initiated this lawsuit against Kessler, James Blackburn ("Blackburn"), and Premier Group Autos, LLC ("Premier") (collectively, "Defendants") for breach of contract. Thereafter, Kessler filed a Counterclaim (Filing No. 60). In its summary judgment motion, NextGear contends there are no genuine issues of material fact that Defendants Premier,

Blackburn, and Kessler are liable for their breaches of contract. Kessler seek partial summary judgment against NextGear, on Court III of its Counterclaim. For the following reasons, the Court **grants** NextGear's Motion and **denies** Kessler's Motion.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court notes that this background section is not intended to provide a comprehensive explanation of all the facts of this case.

In late 2017 or early 2018, Kessler traveled to Florida and was introduced to Blackburn by mutual friends. (Filing No. 131 at 2.) In the later part of 2018, Kessler traveled back to Florida to attend the Fort Lauderdale, Florida boat show with Blackburn. (Filing No. 116 at 3.) At the boat show, Kessler and Blackburn met representatives from Overfinch, a United Kingdom-based company that sells luxury conversions for Land Rovers and Range Rovers. *Id.* As Overfinch was looking to expand its U.S. business, Blackburn and Kessler decided to form a company to buy and sell Overfinch vehicles. *Id.* The two defendants formed a Florida limited liability company named Premier Group Autos, LLC. (Filing No. 131 at 3.)

On November 5, 2018, Blackburn and Kessler entered into a one-page, letter agreement outlining their respective financial contributions to Premier. (Filing No. 116 at 4.) According to the agreement, Kessler and Blackburn would each invest $50,000.00 into the company for the purpose of purchasing vehicles. *Id.* While the agreement also included language indicating that a more formal operating agreement would be agreed to later, a formal operating agreement was never signed by Blackburn and Kessler. *Id.*

After forming the company, Premier entered into a written agreement with Overfinch to sell a specific amount of product on or before December 3, 2019. *Id.* As part of beginning operations, Premier began looking for a lender to obtain floorplan financing, which is when an automobile dealer establishes a line of credit with a lender to purchase vehicles before selling them to a customer and, once the vehicle is sold, repaying the money to the lender. *Id.* at 5. One of the companies Premier contacted to establish floorplan financing was NextGear. *Id.* Founded in 2013, NextGear is one of the nation's leading providers of "floor plan" financing to automobile dealers. ([Filing No. 116 at 2](#)).[1]

After initial negotiations, Premier entered into a contract with NextGear for a $150,000.00 line of credit. *Id.* at 6. An electronic copy of the Demand Promissory Note and Loan and Security Agreement (the "Note") was sent to Kessler and Blackburn on March 26, 2019. *Id.* Blackburn signed the Note electronically on March 26, 2019, and Kessler signed the Note the following day. *Id.* at 7. In addition to the Note, both individuals also signed Individual Personal Guaranties. *Id.* According to the terms of the Note, the principal amount NextGear would lend was $150,000.00 or "such greater or lesser sum which may be advanced to or on behalf of [Premier] from time to time . . . ." *Id.* The Note obligated Premier to pay back any amount advanced for floor planned inventory and the Guaranties signed by Kessler and Blackburn obligated each of them to personally satisfy Premier's obligations under the Note. *Id.* at 8-9.

Premier floored its first vehicle with NextGear on April 16, 2019. *Id.* at 11. Two days later, Arturo Mayoral ("Mayoral"), Sales Executive for NextGear, went to the Premier offices in Fort Lauderdale, Florida to obtain signed Power of Attorney ("POA") documents from Kessler and Blackburn. ([Filing No. 131 at 11](#).) Mayoral's job duties included prospecting for new customers

---

[1] See https://www.nextgearcapital.com/about-us/our-story/ (last visited May 18, 2022).

and selling the NextGear lending product to automobile dealers and he assists in getting signatures to help facilitate the contracting process for new customers of NextGear. (Filing No. 119-3 at 2-4, 8-9). After arriving, Mayoral was escorted to a conference room and introduced to someone he believed was Kessler. (Filing No. 131 at 11.) This individual signed the POA and Mayoral, who was a notary, examined a photocopy of Kessler's driver's license and proceeded to notarize the POA. *Id.* After the initiation of this litigation, it was discovered by both Kessler and NextGear that the person who signed the POA was not Kessler. *Id.* at 17. Over the following months after flooring its first vehicle, Premier floored another ten vehicles. *Id.* at 12.

At some point during the summer of 2019, Premier and NextGear agreed to a temporary increase of $100,000.00 in Premier's credit line. *Id.* To cover some of the cost of those previous vehicles, Premier sent a $150,000.00 payment to NextGear, which NextGear immediately credited to Premier's account. *Id.* After making that payment, Premier then immediately floored $100,000.00 more in vehicles. *Id.* But a few days later, Premier's $150,000.00 payment was rejected by the bank as "non-sufficient funds." *Id.* Because of the issues with Premier's payment, Premier had borrowed $344,978.19 from NextGear to floor vehicles. *Id.* at 12-13. Even after selling the vehicles, Premier did not make any payments to NextGear, rather, it used the funds to pay its rent, wages and other operational expenses. (Filing No. 115-6 at 25.) Because of the nonpayment, NextGear declared Premier in default on October 7, 2019, and demanded payment. (Filing No. 131 at 12-13.) Premier, however, has not made any payment to NextGear since being found in default. *Id.* at 13.

On December 18, 2019, NextGear filed a Complaint in Hamilton County, Indiana state court alleging breach of contract against Premier, breach of the guaranties against Blackburn and Kessler, and conversion against all three Defendants. (Filing No. 1-2.) The Defendants removed

4

the case to this Court on January 31, 2020. (Filing No. 1.) When answering the Complaint, Kessler also filed several counterclaims against NextGear for forgery, deception, violation of Florida statute §117.05, declaratory judgment, and indemnification. (Filing No. 60.) NextGear later amended its Complaint to drop the conversion claim. (Filing No. 109.) On January 31, 2022, NextGear filed its Motion for Summary Judgment on its three remaining claims and all of Kessler's counterclaims. (Filing No. 115.) On the same day, Kessler filed a Motion for Partial Summary Judgment on Count III of its counterclaim; NextGear's alleged violation of the Florida statute (Filing No. 118).

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*,

476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.   DISCUSSION

Plaintiff NextGear initiated this action asserting that Defendants Premier, Blackburn, and Kessler are liable to NextGear for their breaches of contract. Defendant Kessler argues that he is the victim of a serious fraud and forgery committed by Co-Defendant Blackburn, and, at a

minimum, allowed to occur as a result of the actions of the Plaintiff NextGear. Defendant Blackburn does not dispute that the contractual documents supporting NextGear's claims are valid and were signed by the Defendants, but he raises the affirmative defense of impossibility of performance. Before this Court on summary judgment are NextGear's claims of breach of the Note and Guaranties by the Defendants, as well as Kessler's counterclaims against NextGear for forgery, deception, violation of Florida statute §117.05, declaratory judgment, and indemnification. The Court will address each claim and counterclaim in turn.

### A. NextGear's Contract Claims Against Defendants

Under Indiana law, to recover for a breach of contract, a plaintiff must prove (1) a contract existed, (2) the defendant breached the contract, and (3) that the plaintiff suffered damage because of the defendant's breach. *Duncan v. Greater Brownsbury Chamber of Commerce, Inc.*, 967 N.E.2d 55, 57 (Ind. Ct. App. 2012) (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)). NextGear argues that the issue of whether the Defendants breached the Note and Guaranties is a simple, straightforward question of law, especially as neither the Note nor Guaranties contain any ambiguities. (Filing No. 116 at 16-17.) NextGear contends that there is no disagreement that the Note and Guaranties were valid contracts, that the Defendants breached these contracts, and that NextGear was damaged in the amount of $420,070.39, not including post-judgment interest and attorneys' fees. *Id.* at 17.

In response, the Defendants diverge in their defenses, addressed independently below.

#### 1. Premier and Blackburn's Impossibility Affirmative Defense.

Premier and Blackburn argue that their affirmative defense of impossibility of performance raises a question of fact that should result in the denial of NextGear's Motion. (Filing No. 127 at 1.) Specifically, Premier and Blackburn argue that an alleged NextGear representative contacted

Overfinch and Premier's "white-knight" financier and told both parties of Premier's financial issues. *Id.* at 4. Premier and Blackburn argue that this brought "the Defendants' business to a crushing end," making it impossible for Premier to pay back the money it owed to NextGear. *Id.* They contend that the Overfinch agreement was the subject matter of the contract between NextGear and Premier and, as NextGear allegedly destroyed that contract, there is a question of fact as to whether impossibility applies in this case. *Id.* at 4-5.

"Legal impossibility is an affirmative defense that the invoking party has the burden to establish." *Drenter v. Duitz*, 883 N.E.2d 1194, 1201 (Ind. Ct. App. 2008) (citation omitted). In this case, the only evidence Premier and Blackburn have offered is an affidavit from Blackburn regarding the content of alleged statements made by an unnamed NextGear representative to a party other than Blackburn. As NextGear correctly points out, this is hearsay evidence. "A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Thus, NextGear's motion as it pertains to Premier and Blackburn is **granted**.

### 2. Kessler's Defense

In contrast to the other Defendants, Kessler takes a different approach. Kessler argues that both the Note and his Guaranty are unenforceable against him because the POA allegedly signed by him was forged by an unknown third party. (Filing No. 131 at 20.) Kessler argues that the designated evidence shows that a POA signed by him "was (and is) absolutely necessary as part of the overall line of credit provided by NextGear and for the lending of money to [Premier]." *Id.* Kessler contends that, according to NextGear's own policies and procedures, his signing of the POA was an integral part of the agreement between the parties and that the Note and Guaranty are unenforceable given that Kessler never signed the document. *Id.* at 20-21.

Additionally, Kessler argues that he cannot be held liable for the full amount of damages sought by NextGear. *Id.* at 25. Kessler asserts that under the terms of the Note, a POA was required from both Blackburn and Kessler within thirty days of executing the Note or the account would be locked, and no money would be loaned to Premier. *Id.* at 24. Kessler contends that due to the forged POA allegedly from him, Blackburn was able to substantially increase the line of credit and increase the amount of money NextGear now seeks from Kessler. *Id.* at 25. Kessler argues that even if he is liable based on signing the Guaranty, it should be limited to the amount of money that was provided in the first thirty days after execution of the Note. *Id.*

In reply, NextGear argues that Kessler has misstated what NextGear's policies are concerning the POA. (Filing No. 133 at 8.) According to NextGear, the only required POA is one signed by the borrower. *Id.* In this case, Kessler was not the borrower; Premier was. *Id.* A POA for Premier was signed by Blackburn and, as NextGear points out, no party to this lawsuit has questioned either the validity or enforceability of that document. *Id.* NextGear also argues that because there is no question regarding the ambiguity of the Note and Guaranty, Kessler's reliance on internal policies and procedures is misplaced. *Id.* at 9. Under the terms of the Note and Guaranty, a POA is only required from the borrower. *Id.* And even if this Court were to look beyond the terms of the contract, NextGear contends both the Note and Guaranty contained "No Waiver" provisions that, even if NextGear had decided to waive the POA requirement, would not have prevented enforcement of the Note and Guaranty. *Id.*

After reviewing the Note and Guaranty, the Court agrees with NextGear. Under Indiana law, when interpreting a contract, the analysis starts with determining whether the contract's language is ambiguous. *Hartman v. BigInch Fabricators & Constr. Holding Co., Inc.*, 161 N.E.3d 1218, 1223 (Ind. 2021). If the language is not ambiguous, a court applies "its plain and ordinary

9

meaning in light of the whole agreement, 'without substitution or addition.'" *Id.* Neither party argues that the Note or Guaranty are ambiguous so the Court must interpret both by their plain language. According to the Note, a POA was required from the "Borrower," which was Premier. Premier's status as the "Borrower" was also recorded on the Guaranty signed by Kessler. There was no requirement that a POA be signed by Kessler for NextGear to loan money to Premier. Based on the plain language of the Note and Guaranty, the contract is enforceable against Kessler. NextGear's request for summary judgment on the breach of the Guaranty claim against Kessler is **granted**.

B.    <u>**Kessler's Forgery Counterclaim**</u>

NextGear also seeks summary judgment on Kessler's forgery claim. Under Indiana law, a forgery claim requires a party show that "a person who, with intent to defraud, makes, utters, or possesses a written instrument in such a manner that it purports to have been made: (1) by another person; (2) at another time; (3) with different provisions; or (4) by authority of one who did not give authority; commits forgery . . . ." *Hedrick v. State*, 124 N.E.3d 1273, 1281 (Ind. Ct. App. 2019) (quoting Ind. Code § 35-43-5-2(b)). NextGear argues that Kessler's claim fails because he has provided no evidence of criminal intent, specifically that NextGear has the intent to defraud. (Filing No. 116 at 22-23.)

In his response, Kessler does not directly respond to NextGear's arguments regarding the criminal intent required for his forgery claim. But after reviewing the evidence cited by Kessler in response to NextGear's other arguments, the Court agrees with NextGear. "Proof of intent to defraud requires a showing that [a party] demonstrated intent to deceive and thereby work a reliance and injury." *Bocanegra v. State*, 969 N.E.2d 1026, 1028 (Ind. Ct. App. 2012), *trans. denied* (internal quotations omitted).  None of the cited evidence supports a showing that NextGear

intended to deceive Kessler. Summary judgment is **granted** in NextGear's favor on Kessler's forgery claim.

C. **Kessler's Deception Counterclaim**

NextGear also argues that Kessler's deception counterclaim should be dismissed. Before being repealed on July 1, 2021, deception under Indiana law included "knowingly or intentionally mak[ing] a false or misleading statement with intent to obtain property . . . ." Ind. Code § 35-43-5-3(a)(2). In addition to arguing that this statute has been repealed, NextGear argues that Kessler has also failed to identify any evidence supporting the necessary criminal intent. (Filing No. 116 at 23.)

In response, Kessler first contends that his deception claim is still viable after the repeal as the public law that repealed § 35-43-5-3 explicitly stated that any proceeding that had begun under the statute shall "continue and shall be imposed and enforced under prior law as if that section of IC 35-43-5 had not been amended or enacted." (Filing No. 131 at 32.) Secondly, Kessler argues that the designated evidence at least creates a question of fact regarding whether NextGear's employee "knowingly" disregarded Florida's notary requirements when the allegedly forged POA was signed. *Id.* at 32-33. Kessler asserts that this creates a factual dispute regarding "whether Mayoral knowingly made a false or misleading statement on the Kessler Power of Attorney document . . . ." *Id.* at 33.

While the Court agrees that Kessler's deception claim is still actionable after repeal, it does not find any issue of material fact in dispute. Under Indiana law, "knowingly" is defined as follows: "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so", Ind. Code. § 35-41-2-2(b); *see also Marksberry v. State*, 185 N.E.3d 437, 442 (Ind. Ct. App. 2022). The evidence cited by Kessler does not demonstrate that

11

Mayoral's notarizing of the POA was done with a "high probability" that he was making a false or misleading statement to obtain property from Kessler. In fact, as discussed above, the POA was not necessary for Premier to be extended a line of credit, which supports NextGear's argument that the allegedly forged POA was not being used to obtain any property.

As there is no evidentiary support for the required criminal intent, summary judgment is **granted** in NextGear's favor on Kessler's deception claim.

### D.     Kessler's Florida Statute § 117.05 Counterclaim

Both Kessler and NextGear seek summary judgment on Count III of Kessler's counterclaim, violation of Fla. Stat. § 117.05. Under Florida law, "[a] notary public may not notarize a signature on a document unless he or she personally knows, or has satisfactory evidence, that the person whose signature is to be notarized is the individual who is described in and who is executing the instrument." § 117.05(5). "Satisfactory evidence" means "the absence of any information, evidence, or other circumstances which would lead a reasonable person to believe that the person whose signature is to be notarized is not the person he or she claims to be . . . ." *Id.* The documents that can be relied on are listed in the statute and include such documents as a Florida identification card or driver's license, passport, or military identification card. *Id.*

Kessler argues the undisputed evidence shows that Mayoral, while notarizing the POA, did not rely on any of the acceptable forms of identification, instead he relied on a black and white photocopy of Kessler's driver's license. (Filing No. 120 at 19.) Kessler argues that if Mayoral had followed § 117.05, he would not have been caused serious harm or damaged. *Id.* at 20. Additionally, as Mayoral was acting within the scope of his employment with NextGear at the time he notarized the POA, Kessler contends that NextGear is vicariously liable for Mayoral's misconduct. *Id.*

In response, NextGear makes several arguments. First, NextGear argues that the express terms of the Note and Guaranty bar Kessler's claim as he waived his rights to assert his claim and because Indiana law controls any dispute regarding these documents. ([Filing No. 126 at 6-7](Filing No. 126 at 6-7).) Secondly, even if § 117.05 were to apply, there is no private right of action against a notary's employer under Indiana law. *Id.* at 9. And lastly, NextGear argues that Kessler's claim fails because the allegedly fraudulent POA did not cause any damages to Kessler. *Id.* at 11.

Because Kessler's claim is based on the alleged, intentional misconduct of Mayoral after the signing of the Note and Guaranty, the limitations and choice of law provisions do not prevent Kessler from bringing his claim. Likewise, Kessler is correct that at least one Florida district court has allowed a claim under § 117.05 to proceed. *See Filippova v. Mogilvesky*, No. 18-800440CIV, 2019 WL 1369379, at *2 (S.D. Fla. Jan. 15, 2019) (denying a motion to dismiss and finding that a previous decision in the case "did not rule that violation of Florida State § 117.05(6) was outside the jurisdiction of the Court").

But NextGear's argument that Kessler has provided no evidence of damages under the statute is well taken. While Kessler has attempted to tie NextGear to Blackburn's alleged wrongdoing, Kessler's liability to NextGear is solely based on the Note and Guaranty. As discussed above, the POA that was allegedly signed by Kessler was not required under the Note and Guaranty for NextGear to loan Premier money. *See supra* Section I(A)(2). While Kessler has argued that this POA was an integral part of NextGear loaning money to Premier, that is simply not the case. The liability that Kessler attempts to circumvent—the source of his alleged harm and damages under § 117.05—does not stem from the allegedly fraudulent POA. Thus, Kessler has no viable claim under § 117.05 and summary judgment is **granted** in NextGear's favor and Kessler's request for partial summary judgment is **denied**.

### E. Kessler's Declaratory Judgment Counterclaim

NextGear also seeks summary judgment on Kessler's declaratory judgment claim. According to his counterclaim, "Kessler seeks a judicial declaration from the Court that he is not responsible for the alleged breach of the NextGear Note," because he never signed the POA. (Filing No. 60 at 22.) NextGear argues that this claim is both meritless and duplicative to Kessler's other claims and defenses. (Filing No. 116 at 25.) In response, Kessler does not directly address or respond to NextGear's claim.

The Court agrees with NextGear. This counterclaim is duplicative of Kessler's defense to NextGear's breach of contract claims against him. *See Sweet v. Indianapolis Jet Center, Inc.*, 918 F. Supp. 2d 801, 804 (S.D. Ind. 2013) (dismissing declaratory judgment claim where it was "wholly subsumed by . . . claim for breach of contract"). Given that the Court has already granted summary judgment in NextGear's favor on those contract claims, and because Kessler has provided no evidence or argument to support deciding differently on this claim, the Court **grants** summary judgment in NextGear's favor on Kessler's declaratory judgment counterclaim.

### F. Kessler's Indemnification Counterclaim

Finally, NextGear seeks summary judgment on Kessler's indemnification counterclaim. The right to indemnification arises through a contract or by a statutory obligation; however, it may also be implied at common law. *See Underwood v. Fulford*, 128 N.E.3d 519, 524-25 (Ind. Ct. App. 2019). Kessler has not alleged contractual or statutory indemnification, so the only source for his claim is the common law. "In the absence of any express contractual or statutory obligation to indemnify, such action will lie only where a party seeking indemnity is without actual fault but has been compelled to pay damages due to the wrongful conduct of another for which he is constructively liable." *Id.* NextGear argues that Kessler is directly liable for his own breach of the

Guaranty and that constructive liability as to NextGear is not an issue in this case. (Filing No. 116 at 27.) Additionally, NextGear claims that even if Kessler could overcome this barrier, his claim is premature given that the "obligation to indemnify does not arise until the party seeking indemnity suffers loss or damages." *Id.* (citing *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010)).

In response, Kessler argues that summary judgment is improper because his liability "is derivative and flows directly from Mayoral's wrongful conduct in assisting in the forgery of the Kessler Power of Attorney." (Filing No. 131 at 34). Kessler contends that but for the allegedly forged POA, Blackburn would have not drawn on the line of credit, thus leading Kessler to be liable. *Id.*

As the Court has discussed several times already, Kessler's theory that Mayoral's misconduct caused his liability to NextGear is flawed. The allegedly forged POA was not required for NextGear to extend a line of credit to Premier, and Mayoral's actions did not cause Kessler to sign the Guaranty. Summary judgment is **granted** in NextGear's favor on Kessler's indemnification counterclaim.

### IV.     CONCLUSION

For the reasons explained above, the Court **GRANTS** NextGear's Motion for Summary Judgment (Filing No. 115) and **DENIES** Kessler's Motion for Partial Summary Judgment (Filing No. 118). Summary judgment is **granted in favor of NextGear** on its claims for (1) breach of contract against Premier; (2) breach of contract against Blackburn; and (3) breach of contract against Kessler. Summary judgment is also **granted in favor of NextGear** on Kessler's counterclaims for (1) fraud; (2) deception; (3) violation of Florida statute § 117.05; (4) declaratory judgment; and (5) indemnification. Kessler's counterclaims are dismissed.

NextGear requests "damages against all of the Defendants in the presently-due amount of $429,070.39 (or as may be adjusted over time), plus attorney's fees, costs, and post-judgment interest." (Filing No. 116 at 28). The amount of damages on these claims may be resolved by settlement or if settlement fails, by the trier of fact. The parties are directed to contact the Magistrate Judge to schedule a settlement conference on the issue of damages and fees.

The June 22, 2022 final pretrial conference is **vacated**. The July 18, 2022 trial is **converted to a damages hearing** if such a hearing is necessary.

Final judgment will issue in a separate order once damages have been resolved.

**SO ORDERED.**

Date:   5/18/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christina M. Bruno
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
cbruno@boselaw.com

Jason R. Delk
DELK MCNALLY LLP
delk@delkmcnally.com

Ryan Lee Garner
ROCAP LAW FIRM LLC
rlg@rocap-law.com

Michael G Gibson
NEXTGEAR CAPITAL, INC.
michael.gibson@nextgearcapital.com

Brian Scott Jones
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
b.jones@boselaw.com

David J. Jurkiewicz
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
djurkiewicz@boselaw.com

Richard A. Rocap
ROCAP LAW FIRM LLC
rar@rocap-law.com

Austin P. Sparks
DELK MCNALLY LLP
sparks@delkmcnally.com