IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **NEXTGEAR CAPITAL, INC.,** ) | |
| ) | |
| Plaintiff ) | |
| ) | CASE NO. 1:20-cv-00354-TWP-DLP |
| v. ) | |
| ) | |
| **PREMIER GROUP AUTOS, LLC,** ) | |
| **JAMES M. BLACKBURN, and** ) | |
| **EDWARD A. KESSLER,** ) | |
| Defendants ) | |

### DEFENDANT, EDWARD A. KESSLER'S, MOTION TO RECONSIDER COURT'S SUMMARY JUDGMENT ORDER (Dkt. 134)

The Court should reconsider its Order granting summary judgment in favor of NextGear on Count III of Kessler's Counterclaim, i.e., Kessler's claim against NextGear for violation Florida Statute § 117.05. (*See* Dkt. 134 a pp. 12-13). In rendering summary judgment in favor of NextGear, the Court determined that the forged Kessler Power of Attorney ("POA") was not contractually required by the Note and Guaranty in order for NextGear to loan Premier Group Autos money. And, as a result, the Court stated that Kessler has no viable claim under Fla. Stat. § 117.05. In essence, the Court determined that since the Note and Guaranty only required the "Borrower" to sign a POA in favor of NextGear, the forged Kessler POA is of no consequence and NextGear's employee's undisputed notary misconduct and violation of Florida Statute § 1177.05 does not matter.

Respectfully, the Court should reconsider its Order as the designated and undisputed evidence demonstrated that NextGear's internal policies and procedures related to the subject transaction did, in fact, require Kessler to sign the POA in order for NextGear to lend money under the Note. This is true regardless of what the contract language of the Note required. If NextGear

1

did not need Kessler to sign the POA, then why did Mayoral seek to have the POA signed? The fact that Mayoral, on behalf of NextGear, sought and obtained the Kessler POA is evidence that NextGear required both Kessler and Blackburn to sign the POA regardless of the language of the Note.

The designated emails and testimony also prove that both Blackburn and Kessler were required to sign and return POAs as the "stipulations" for the underwriting for the subject Note required Kessler's signed POA. (*See* Dkt. 131 at pp.7-9). Again, if Kessler was not required to sign the POA as part of the lending/funding process, then why do NextGear's internal communications require as "stipulations" for both Kessler and Blackburn to sign and deliver POAs? The designated evidence certainly creates factual disputes on this topic and demonstrates that NextGear required Kessler's signed POA in order to lend funds to Premier Group Autos.[1]

Regardless of what the Note requires or does not require, the facts and testimony designated to the Court prove that NextGear required Kessler's POA. The designated evidence, construed in Kessler's favor as the non-moving party, shows that factual disputes exist regarding whether the Premier Group Autos account would have been locked after NextGear failed to obtain Kessler's POA. Without the execution of the Kessler Power of Attorney document, the undisputed evidence demonstrates that NextGear, at a minimum, would have "locked" the account and no funds would have been lent by NextGear to PGA after the first thirty (30) days after contract execution.

The analysis of NextGear's liability under the Florida Notary Public Statute is not dependent on what the contract language of the Note requires or does not require. The designated

---

[1] According to Section 8(g) of the Note, NextGear had the right and contractual authority to require "such other documents or certifications as Lender may request or require from Borrower or any Guarantor from time to time." (*See* Dkt. 1-3 at p. 16). Here, the testimony, documentary evidence and emails show that NextGear did, in fact, exercise this option and required Kessler to sign the POA as the "stipulations" clearly stated both Blackburn and Kessler were required to sign and deliver POAs. (*See* Dkt. 131 at pp.7-8); (Dkt. 119-2 pp. 25 & 38).

evidence shows that Mayoral, acting in the course and scope of his employment with NextGear, committed notary misconduct by failing to follow Fla. Stat. § 117.05 and notarizing a forged document—knowing all the while that Edward Kessler did not appear before Mayoral and sign the POA.  Mayoral failed to comply with his obligations and his failure has caused serious harm and damages to Kessler.

In addition, newly obtained evidence also demonstrates that Mayoral told Blackburn that both Kessler and Blackburn were required to sign the POAs and that "…both POAs [needed] signed immediately." (*See* Ex. A at ¶ 3).  In addition, prior to the execution of the POA documents, Mr. Blackburn informed Mayoral that Kessler was not available to sign the POA in-person as Mr. Kessler was not in Florida.  (*Id*. at ¶ 4).  In response, Mr. Mayoral told Mr. Blackburn that "Kessler's absence was not a problem and that we could still get the POAs signed despite Kessler not being present to obtain a 'wet signature.'"  (*Id*. at ¶ 4).  Mayoral also told Blackburn that Mayoral "needed both POAs signed as he [Mayoral] did not want to jeopardize losing the sale of the account/loan to PGA."  (*Id*. at ¶ 3).  These newly learned facts further demonstrate the culpability of Mayoral and NextGear and provide even more evidence of Mayoral and NextGear's misconduct.[2]

Despite the Court's suggestion to the contrary, Kessler has provided evidence of the damages sustained by virtue of the notary misconduct.  Kessler submitted to the Court the nature of the substantial damages proximately caused by Mayoral's notary misconduct.  As Kessler

---

[2] These newly discovered facts, as set forth in the attached Affidavit of James Blackburn, also warrant the Court's reconsideration of granting summary judgment in favor of NextGear on Count I (Forgery) of Kessler's Counterclaim.  The Court found that there was no evidence of intent to defraud.  (*See* Dkt. 134 at p. 10).  However, in light of these newly learned facts, factual disputes certainly exist as this newly discovered evidence shows that Mayoral had an intent to defraud as Mayoral knew Kessler was not present for the signing of the POA, but told Blackburn that "we could still get the POAs signed despite Kessler not being present to obtain a 'wet signature.'" (*See* Ex. A at ¶ 4).  With this prior knowledge, Mayoral still proceeded to notarize the POA and attest that Kessler appeared before him and signed the POA.

previously stated, because Mayoral failed to follow procedure in notarizing the Kessler Power of Attorney document, Mayoral allowed a fraudulent and forged Power of Attorney document to exist and be presented to NextGear.  In light of this forgery, the NextGear lending department had all "stipulations" required for contract execution and in securing the line of credit.  As a result of the forged Power of Attorney, the PGA line of credit was able to proceed and was never locked as required by NextGear policy and procedure.  As a result, Blackburn was able to siphon over $350,000.00 from the line of credit.

Quite simply, but for Mayoral's participation in the forgery (negligent or otherwise), NextGear would not have provided over $350,000.00 in funds to PGA because NextGear would not have received the required Power of Attorney document.  And, as NextGear's policy makes clear, NextGear would have locked the PGA account because the required Power of Attorney documents were not received.  Therefore, no funds would have been provided to PGA and Kessler would not be in a situation where NextGear is seeking to recover over $600,000.00 in damages, attorney's fees and interest from Kessler.

Mayoral's notary misconduct allowed NextGear to obtain a document absolutely critical and necessary to the overall funding of the PGA line of credit.  Because of Mayoral's misconduct, Kessler has been damaged and factual disputes exist regarding NextGear's liability as a result of Mayoral's notary misconduct.

Accordingly, the Court's Order granting summary judgment in favor of NextGear on Count III of Kessler's Counterclaim should be reconsidered by the Court and summary judgment should ultimately be denied on Count III of Kessler's Counterclaim.

                        Respectfully submitted,

                        DELK McNALLY LLP

                        */s/ Jason R. Delk*
                        Jason R. Delk, Atty. No. 24853-18
                        *Attorney for Defendant, Edward Kessler*

DELK McNALLY, LLP
211 S. Walnut Street
Muncie, IN 47305
Telephone: 765-896-9495
Facsimile: 888/453-0545

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been served upon all counsel of record via the Court's electronic case filing system this 14th day of July, 2022.

                        */s/ Jason R. Delk*
                        Jason R. Delk

DELK McNALLY, LLP
211 S. Walnut Street
Muncie, IN 47305
Telephone: 765/896-9495
delk@delkmcnally.com